STATE OF NORTH CAROLINA v. JAMES WILLIAM JONES

No. 8715SC674

(Filed 19 April 1988)

**1. Constitutional Law § 66— competency of child victim—exclusion of defendant from courtroom during voir dire testimony**

In a prosecution for taking indecent liberties with a four-year-old child, the trial court's exclusion of defendant from the courtroom during testimony by the victim in a *voir dire* hearing to determine the victim's competency to testify at trial did not violate defendant's right to confrontation under the Sixth Amendment to the U.S. Constitution or his rights under the open courts provision of Art. I, § 18 of the N.C. Constitution where a child psychologist testified that the victim exhibited an intense fear of defendant and could suffer emotional harm if forced to testify in his presence; the trial judge secluded defendant in the judge's chambers with a closed circuit television when the victim testified; defendant's attorney was present in the courtroom throughout the victim's testimony; defendant and his attorney were permitted to confer after the victim's direct testimony and before completion of cross-examination of her; defendant's attorney had an unrestricted oportunity to cross-examine the victim; and the trial court concluded that the victim was incompetent to testify at trial.

**2. Criminal Law § 73— hearsay testimony—when admissible**

The unavailability of the child victim due to incompetency and the evidentiary importance of the victim's statements meet the necessity requirement of the two-part test for the admission of hearsay evidence. The second part of the test, which requires a showing that the hearsay statement is inherently trustworthy, is met when the evidence falls within a statutory hearsay exception.

**3. Criminal Law § 73.5— sexual assault—statements by child victim to mother—medical diagnosis exception to hearsay rule**

Testimony that the four-year-old victim told her mother that defendant had sexually assaulted her was admissible under the medical diagnosis exception to the hearsay rule provided by N.C.G.S. § 8C-1, Rule 803(4) where the victim's statements to her mother resulted in immediate medical care for the victim.

**4. Criminal Law § 73.5— child's statements to social worker—medical diagnosis exception to hearsay rule**

Testimony by a social worker who was a member of the Duke Child Protection Team describing a child victim's identification of defendant as the person who committed indecent liberties upon her was admissible under the medical diagnosis exception to the hearsay rule, notwithstanding the child was examined and evaluated by the Team three months after the molestation upon the recommendation of the district attorney, where the witness's interview of the victim sought to elicit information about the molestation for the purpose of aiding a physical examination and diagnosis of the victim's condition, and the victim received psychological treatment after the Team diagnosed her as sexually abused.

State v. Jones

**5. Criminal Law § 34.8— evidence of another crime—competency to show common plan**

In a prosecution of defendant for taking indecent liberties by rubbing the child victim's vagina with his finger, a social worker's testimony that the victim stated that defendant had also put "his peter in her mouth" was admissible under N.C.G.S. § 8C-1, Rule 404(b) to establish a common plan or scheme by defendant to sexually abuse the victim. Furthermore, the trial court was not required to exclude this testimony under Rule 403 on the ground that its· probative value was substantially outweighed by the danger of unfair prejudice.

**6. Criminal Law § 73.4— child's statements to parents—admissibility as excited utterances**

Statements made by a child victim to her parents within ten hours after leaving defendant's custody that defendant "pulled my pants down and touched my pee patch again" and that he had done so before were admissible as excited utterances under N.C.G.S. § 8C-1, Rule 803(2).

**7. Criminal Law § 51.1— expert in child abuse—sufficient showing**

The trial court did not err in permitting a physician's assistant to testify as an expert in child abuse where the witness testified that she has taught as an assistant professor in the Duke University Pediatrics Department; she has published numerous articles in medical journals and has edited a pediatric textbook on the topic of diagnosis and evaluation of sexually abused children; and she has served as an expert witness in the area of sexual abuse of children at several dozen trials.

**8. Witnesses § 1.2— informing jury that child witness incompetent**

The trial court in an indecent liberties case did not err in informing the jury that the four-year-old victim had been found incompetent to testify as a witness at the trial.

**9. Rape and Allied Offenses § 19— indecent liberties with child—sufficient evidence**

The evidence was sufficient to permit the jury to infer that defendant took indecent liberties with the child victim for the purpose of gratifying his sexual desire where it tended to show that defendant moved the victim to an isolated room where he pulled down her underwear and rubbed her vagina with his finger.

**10. Constitutional Law § 66— State's use of hearsay—no violation of right to confrontation**

Defendant's right to confrontation under the Sixth Amendment to the U.S. Constitution and Art. I, § 25 of the N.C. Constitution was not violated by the State's use of hearsay evidence where the declarant was unavailable to testify and the evidence was admissible under established exceptions to the hearsay rule.

APPEAL by defendant from *Battle, Judge.* Judgment entered 11 February 1987 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 12 January 1988.

Defendant was indicted and convicted of taking indecent liberties with a four-year-old child, in violation of N.C.G.S. § 14-202.1. From a judgment sentencing defendant to a five year active term, he appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Debra K. Gilchrist, for the State.*

*Daniel H. Monroe, for defendant-appellant.*

ORR, Judge.

I.

[1] Defendant contends the trial court erred in excluding him from the voir dire hearing during the victim's testimony to determine her competency to testify.

Prior to examining the victim, the judge heard the testimony of the victim's psychologist, Dr. Betty Gordon. Dr. Gordon, a clinical child psychologist specializing in sexual abuse, testified that the victim exhibited an intense fear of the defendant and that she could suffer emotional harm if forced to testify in his presence.

Based upon Dr. Gordon's testimony, the judge secluded defendant in the judge's chambers with a closed circuit television, when the victim was examined.

The television allowed defendant to see and hear the victim's testimony. In addition, defendant and his attorney were authorized to confer after the victim's direct examination and prior to culmination of the victim's cross-examination. Defendant's attorney was present in the courtroom throughout the victim's testimony and had an unrestricted opportunity to cross-examine her.

After the voir dire hearing, the trial court concluded the victim was incompetent to testify at trial, and declared her to be an unavailable witness.

A. Defendant argues his exclusion from the courtroom violated his Sixth Amendment right to confrontation under the United

States Constitution, and his rights under Article I, §§ 18, 19 or 23 of the North Carolina Constitution.

The legality of excluding a defendant from the courtroom during a competency hearing is an issue of first impression in North Carolina. However, this issue was recently addressed by the U.S. Supreme Court in *Kentucky v. Stincer*, 482 U.S. ---, 96 L.Ed. 2d 631 (1987).

In *Stincer* the defendant was excluded from a hearing determining the competency of a young girl and a young boy the defendant was charged with sexually abusing. The *Stincer* court did not provide the defendant with either a closed circuit television or the opportunity to confer with his attorney while excluded. The trial court in *Stincer* found the children competent to testify; therefore, the defendant had an opportunity to effectively cross-examine the children at trial. This opportunity to cross-examine, the U.S. Supreme Court held, prevented defendant's Sixth Amendment right to confrontation from being violated by his exclusion from the courtroom during voir dire.

The U.S. Supreme Court discussed the purpose and protections of the Sixth Amendment Confrontation clause in *Stincer*, saying:

> The Court has emphasized that 'a primary interest secured by [the Sixth Amendment Confrontation Clause] is the right of cross-examination.' *Douglas v. Alabama*, 380 US 415, 418, 13 L Ed 2d 934, 85 S Ct 1074 (1965). The opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process. Cross-examination is 'the principal means by which the believability of a witness and the truth of his testimony are tested.' *Davis v. Alaska*, 415 US 308, 316, 39 L Ed 2d 347, 94 S Ct 1105 (1974).

*Stincer*, 482 U.S. at ---, 96 L.Ed. 2d at 641.

> Of course, the Confrontation Clause guarantees only '*an opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' *Delaware v. Fensterer*, 474 US, at 20, 88 L Ed 2d 15, 106 S Ct 292 (emphasis in original). This limitation is consistent with the concept that the right

to confrontation is a functional one for the purpose of promoting reliability in a criminal trial.

*Id.* at ---, 96 L.Ed. 2d at 643.

Based on the decision in *Stincer*, we conclude the determinative question in the present case is whether defendant's exclusion from the courtroom interfered with his opportunity for effective cross-examination.

The record shows that after direct examination of the victim ended, defendant's attorney cross-examined her. When the attorney had completed his own cross-examination, he left the room briefly, conferred with defendant and then returned to ask the victim several more questions before ending all cross-examination.

Defendant heard the complete testimony of the victim during her direct examination and her initial cross-examination. After the initial cross-examination, defendant was able to confer with his attorney and bring to his attorney's attention any discrepancies in the victim's testimony or any crucial unaddressed issues requiring further cross-examination. Thus, defendant, although absent from the courtroom, was able to hear all testimony, interact freely with his attorney, and through his attorney confront the victim, thereby accomplishing effective cross-examination.

We conclude the procedures enacted by the trial court under the facts of this case did not violate defendant's Sixth Amendment right to confrontation.

B. We also conclude the exclusion of defendant did not violate Article I, §§ 18, 19 or 23 of the North Carolina Constitution.

Specifically, we address Article I, § 18, which states in pertinent part, "All court shall be open . . . ." Prior case law in North Carolina holds a defendant has a constitutional right to be present at all stages of a court proceeding so that he may hear the evidence and have an opportunity to refute it. *State v. Pope*, 257 N.C. 326, 126 S.E. 2d 126 (1962); *Raper v. Berrier*, 246 N.C. 193, 97 S.E. 2d 782 (1957).

We find the trial court's use of a closed circuit television and its act of providing defendant and his attorney adequate opportunity to communicate during the victim's testimony, were sufficient to permit defendant to hear the evidence and to refute it.

Therefore, defendant's rights under the North Carolina Constitution were also fully protected.

## II.

Defendant next contends the hearsay evidence rule prohibited Deborah Matthews, Randell Matthews, and Nancy Berson from testifying as to statements made by the victim.

At trial the victim's mother, Deborah Matthews, and father, Randell Matthews, testified that on 19 July 1986 at approximately 8:00 p.m. the victim told the mother in the presence of the father that "Poppy pulled my pants down and touched my pee patch again." The parents further testified that the victim, when asked what she meant by again, responded that Poppy had touched her another time, "And he wiggled his finger around in my pee patch and hurt me." The victim's mother also testified that the victim described her vaginal area as her "pee patch."

In addition, Nancy Berson, a social worker and Coordinator and Child Evaluator for the Duke Child Protection Team, testified she had interviewed the victim on 16 and 17 October 1986 at the Duke Medical Center Pediatric Clinic. During the interview, the victim told Ms. Berson that she had been sleeping with Nanny, her grandmother, when Poppy, her step-grandfather, "snuck up and got [her]" and took her to another room, where he hurt her pee patch with his hand. Ms. Berson also testified that the victim "pulled down her bottom lip just like this to demonstrate the gums, and she said, 'Poppy hurt me here,' and I said, 'Well, how did he hurt you?' and she said he put his peter in her mouth. While saying this, before I could say anything else, she said to me, 'It made me sick, it made me heave.'"

To introduce hearsay evidence in a criminal trial, the prosecution must meet two requirements: (1) it must show the necessity for using hearsay testimony, and (2) it must establish the inherent trustworthiness of the original declaration. *Ohio v. Roberts*, 448 U.S. 56, 65 L.Ed. 2d 597 (1980); *State v. Smith*, 312 N.C. 361, 323 S.E. 2d 316 (1984); *State v. Gregory*, 78 N.C. App. 565, 338 S.E. 2d 110 (1985), *appeal dismissed and disc. rev. denied*, 316 N.C. 382, 342 S.E. 2d 901 (1986).

[2]  In the present case, the trial court, after holding a N.C.G.S. § 8C-1, Rule 601(b) competency hearing, found the victim incompe-

tent to testify at trial. Since the State's case against defendant consisted mainly of the victim's statements, "[t]he unavailability of the victim due to incompetency and the evidentiary importance of the victim's statements adequately demonstrate[d] the necessity" requirement of the two-part hearsay test. *State v. Gregory,* 78 N.C. App. at 568, 338 S.E. 2d at 112-13.

The second part of the test, a showing that the hearsay statement is inherently trustworthy, is established when the evidence falls within a statutory hearsay exception. N.C.G.S. § 8C-1, Rule 802 (1986); *accord, Ohio v. Roberts,* 448 U.S. at 66, 65 L.Ed. 2d at 608.

Therefore, to determine the admissibility of the State's evidence, we must examine the facts underlying each of the victim's statements, testified to by the witnesses, to see if they fall within an exception to the hearsay evidence rule.

A. Testimony of mother, Deborah Matthews.

**[3]** The State contends Mrs. Matthews' testimony was admissible under Rule 803(4), the statutory exception for statements made for purposes of medical diagnosis or treatment. N.C.G.S. § 8C-1, Rule 803(4) (1986); *State v. Smith,* 315 N.C. 76, 337 S.E. 2d 833 (1985); *State v. Gregory,* 78 N.C. App. 565, 338 S.E. 2d 110.

Rule 803(4) permits admission of:

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

In *State v. Smith,* 315 N.C. 76, 337 S.E. 2d 833, the Supreme Court found Rule 803(4) permitted admission of hearsay on facts similar to those in the present case. In *Smith,* two young girls, ages four and five, told their grandmother that a family friend had sexually assaulted them. In response to the children's statements, the grandmother immediately obtained medical care for the children. The Supreme Court said that although the children did not specifically request medical care, they had sought help for their conditions from their caretaker, and their statements resulted in immediate medical treatment and diagno-

sis. Therefore, the Supreme Court held the children's conversation with the grandmother, identifying the type of sexual assault they had suffered and their attacker, was properly admitted as substantive evidence pursuant to the Rule 803(4) hearsay exception.

Here, the four-year-old victim told her mother, Mrs. Matthews, that defendant had sexually assaulted her. The mother responded to the victim's statements by immediately calling a doctor and then taking the victim to the hospital. Consequently, the victim's conversation with her mother caused her to receive immediate medical treatment.

We find no significant difference between the facts in *State v. Smith*, 315 N.C. 76, 337 S.E. 2d 833 and the present facts. We conclude the trial court properly admitted the mother's testimony at trial, pursuant to Rule 803(4).

B. Testimony of Nancy Berson.

[4] (1) The State argues Ms. Berson's testimony describing the victim's identification of defendant as her attacker was also admissible under Rule 803(4) as statements made for purposes of medical diagnosis and treatment.

Statements made to a medical worker, if pertinent to diagnosis or treatment, are admissible under Rule 803(4). *State v. Aguallo*, 318 N.C. 590, 350 S.E. 2d 76 (1986); *State v. Oliver*, 85 N.C. App. 1, 354 S.E. 2d 527, *disc. rev. denied*, 320 N.C. 174, 358 S.E. 2d 64 (1987).

Defendant argues the victim's statements to Ms. Berson do not fall under Rule 803(4) because Ms. Berson's actions were not for the purpose of treatment or diagnosis, but were instead for the purpose of gathering evidence for the State.

In determining the purpose of a medical examination our Courts have considered the following factors: (1) whether the examination was requested by persons involved in the prosecution of the case; (2) the proximity of the examination to the victim's initial diagnosis; (3) whether the victim received a diagnosis or treatment as a result of the examination; and (4) the proximity of the examination to the trial date. *State v. Stafford*, 317 N.C. 568, 346 S.E. 2d 463 (1986); *State v. Oliver*, 85 N.C. App. 1, 354 S.E. 2d 527.

The victim's mother took her for evaluation by the Duke Child Protection Team (Team) on the recommendation of the prosecuting attorney, Mr. White, and the child's psychologist, Dr. Betty Gordon.

The recommendation of the prosecuting attorney, while suspect, does not automatically render Ms. Berson's testimony inadmissible. As social worker Donna Somers testified, because defendant was not a primary caretaker of the child, social services could not become involved in the case. Consequently, when the child began to exhibit physical and behavioral problems, the mother asked Mr. White for advice instead of turning to a social worker. Mr. White referred the victim's mother to Dr. Betty Gordon, a child psychologist specializing in the evaluation and treatment of sexually abused children. He also referred the mother to the Team for a disclosure interview and medical exam, to determine if there was medical evidence of sexual abuse.

The victim's mother took the child to Dr. Gordon for treatment on 13 October 1986, at which time Dr. Gordon also recommended the child be evaluated by the Team.

The victim was examined and evaluated by the Team on 16 and 17 October 1986, approximately three months after her molestation. Prior to the Team's examination, the victim had been treated several times by Dr. Carol Kline, M.D., and once by Dr. Betty Gordon, a psychologist.

Dr. Kline testified, however, that when she examined the child she was not looking for signs of sexual abuse. Consequently, the victim's examination by the Team was the first time she was physically evaluated for the purpose of medically diagnosing sexual abuse. In addition, Dr. Gordon did not conduct a disclosure interview with the victim as part of her treatment upon learning the Team would be evaluating the victim.

Ms. Berson explained at trial that a Team evaluation for sexual abuse of a child consisted of two parts: a disclosure interview and a physical examination. Ms. Berson testified that a disclosure interview sought to elicit information about the molestation for the purpose of aiding the medical examination and diagnosis of the victim's condition.

After evaluating the victim's disclosure interview and medical examination, the Team diagnosed the victim as having been sexually abused.

Finally, the record shows the disclosure interview and diagnosis by the Team occurred approximately four months before trial, and that after the Team diagnosed the victim as sexually abused, she received psychological treatment for her condition from Dr. Gordon.

Based upon the evidence discussed above, this Court finds the victim's statements to Ms. Berson were made for the purpose of medical diagnosis. We conclude the trial court properly admitted Ms. Berson's testimony under the Rule 803(4) exception to hearsay.

**[5]** (2) Defendant also challenges Ms. Berson's testimony that the victim said defendant had put "his peter in her mouth."

Defendant argues this evidence was inadmissible for two reasons. First, he asserts the testimony was prohibited by N.C.G.S. § 8C-1, Rule 404(b), which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

North Carolina courts have been "very liberal in admitting evidence of similar sex crimes in construing the exceptions to the general rule [stated in N.C.G.S. § 8C-1, Rule 404(b)]." *State v. Williams*, 303 N.C. 507, 513, 279 S.E. 2d 592, 596 (1981); *State v. DeLeonardo*, 315 N.C. 762, 340 S.E. 2d 350 (1986).

In four cases involving sexual abuse of children, the Supreme Court and the Court of Appeals have permitted testimony of other sex acts, similar in nature and circumstances, for the purpose of showing a common plan or scheme on the part of the defendant to commit the crime charged. *State v. DeLeonardo*, 315 N.C. 762, 340 S.E. 2d 350 (evidence of defendant's sexual abuse of daughter permitted at defendant's trial for sexual abuse of two sons); *State v. Effler*, 309 N.C. 742, 309 S.E. 2d 203 (1983) (evidence of defend-

ant's act of fellatio with son permitted at defendant's trial for sodomy with son); *State v. Williams*, 303 N.C. 507, 279 S.E. 2d 592 (evidence of defendant's fondling of girl's breasts permitted at defendant's trial for first-degree sexual offense with two other girls); *State v. Goforth*, 59 N.C. App. 504, 297 S.E. 2d 128 (1982), *disc. rev. allowed for limited purpose on other grounds*, 307 N.C. 699, 307 S.E. 2d 162 (1983) (evidence of defendant's sexual abuse of two older step-daughters permitted at defendant's trial for attempted first-degree rape of third step-daughter).

In the present case, as in *DeLeonardo, Effler, Williams* and *Goforth*, the challenged evidence tends to establish a common plan or scheme on the part of defendant to sexually abuse the victim, his step-granddaughter. Thus, the evidence relating to defendant's other sexual activity with the victim was properly admitted under Rule 404(b).

Defendant finally contends this testimony, if admissible under Rule 404(b), should have been excluded pursuant to N.C.G.S. § 8C-1, Rule 403, because its probative value was substantially outweighed by the danger of unfair prejudice.

Whether or not to exclude evidence under Rule 403 is a matter within the sound discretion of the trial court, "and his ruling may be reversed for an abuse of discretion only upon a showing that it 'was so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Mason*, 315 N.C. 724, 731, 340 S.E. 2d 430, 435 (1986), *quoting State v. Thompson*, 314 N.C. 618, 626, 336 S.E. 2d 78, 82 (1985).

The record discloses no evidence of an abuse of discretion by the trial court. Therefore, we overrule this assignment of error.

C. Testimony of father, Randell Matthews.

[6] Defendant further contends the father's testimony concerning the victim's statements violated the hearsay evidence rule. The State argues this testimony was admissible under the excited utterance hearsay exception, N.C.G.S. § 8C-1, Rule 803(2) as: "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

"In order to fall within this hearsay exception, there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication. McCormick on Evidence § 297." *State v. Smith*, 315 N.C. 76, 86, 337 S.E. 2d 833, 841 (1985).

The Supreme Court addressed the admissibility of statements made by young children, and testified to in court by the adult to whom they were made, as Rule 803(2) excited utterance exceptions to the hearsay rule in *State v. Smith*, 315 N.C. 76, 337 S.E. 2d 833.

The Court in *Smith* found "that the stress and spontaneity upon which the exception is based is often present for longer periods of time in young children than in adults." *State v. Smith*, 315 N.C. at 87, 337 S.E. 2d at 841 (citations omitted).

'This ascertainment of prolonged stress is born of three observations. First, a child is apt to repress the incident. Second, it is often unlikely that a child will report this kind of incident to anyone but the mother. Third, the characteristics of young children work to produce declarations "free of conscious fabrication" for a longer period after the incident than with adults.' *Padilla*, 110 Wis. 2d at 419, 329 N.W. 2d at 266 (citations omitted).

*Id.* at 87-88, 337 S.E. 2d at 841.

Here, the victim entered the bedroom where her parents were watching television, walked over to her mother, and said, "Mama, Poppy pulled my pants down and touched my pee patch again." The victim made this statement within ten hours after leaving defendant's custody. She reported the incident specifically to her mother, and she made the statement without hesitation and without prompting by her parents.

These facts are sufficient to show that the victim's statements were a spontaneous reaction to a startling experience, as defined in *Smith*. We conclude the trial court properly admitted the father's testimony as to the victim's statements under the hearsay exception for excited utterances, Rule 803(2).

### III.

[7] Defendant further argues the trial court erred in qualifying State's witness Marcia Herman-Giddens, a physician's assistant, as an expert in the area of child sexual abuse.

"Whether the witness has the requisite skill to qualify him as an expert is chiefly a question of fact, the determination of which is ordinarily within the exclusive province of the trial judge. . . . A finding by the trial judge that the witness possesses the requisite skill will not be reversed on appeal unless there is no evidence to support it. . . ." *State v. King*, 287 N.C. 645, 658, 215 S.E. 2d 540, 548-49 (1975), *death sentence vacated*, 428 U.S. 903, 49 L.Ed. 2d 1209 (1976); *State v. Zuniga*, 320 N.C. 233, 357 S.E. 2d 898, *cert. denied*, --- U.S. ---, 98 L.Ed. 2d 384 (1987).

At trial, Ms. Herman-Giddens testified that she specialized in the area of child abuse and that she had taught for eight years, as an assistant professor, in the Duke University Pediatrics Department. She further said she had published numerous articles in medical journals and had edited one pediatric textbook on the topic of diagnosis and evaluation of sexually abused children. She also testified that she had served as an expert witness in the area of sexual abuse of children at several dozen prior trials.

Ms. Herman-Giddens' testimony that the victim had been sexually abused was, therefore, based upon her training and experience in the area of sexual abuse of children. Since there is evidence to support the trial court's conclusion that Ms. Herman-Giddens is an expert in child sexual abuse, we find no abuse of discretion in the admission of her testimony.

### IV.

Defendant challenges two actions taken by the trial court during his administration of the trial.

The presiding judge is given large discretionary power as to the conduct of a trial. Generally, in the absence of controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial or which involve the proper administration of justice in the court, are within his discretion.

*State v. Rhodes*, 290 N.C. 16, 23, 224 S.E. 2d 631, 635 (1976); *State v. Young*, 312 N.C. 669, 325 S.E. 2d 181 (1985).

[8] Defendant first contends the trial court erred in notifying the jury that the victim had been found an incompetent witness and would not testify at trial.

After reviewing the record we find defendant's evidence did not show the trial court's statement to the jury lacked a rational basis. Thus, defendant failed to establish an abuse of discretion. *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430; *State v. Thompson*, 314 N.C. 618, 336 S.E. 2d 78.

Next, defendant argues the trial court erred in permitting the district attorney to present the victim to the jury, when the victim would not be testifying.

We reject defendant's second argument because he failed to preserve in the record any evidence showing that the victim was, in fact, presented to the jury at trial.

Accordingly, we find that defendant's evidence in support of both arguments was insufficient to show that the trial court's actions constituted either an abuse of discretion or prejudicial error. We overrule these assignments of error.

V.

[9] Defendant argues the State's evidence was insufficient to establish he acted "for the purpose of arousing or gratifying sexual desire," pursuant to N.C.G.S. § 14-202.1, when he assaulted the victim. Therefore, he asserts the trial court improperly denied his motions to dismiss.

Upon a motion to dismiss, "all of the evidence favorable to the State, whether competent or incompetent, must be considered, such evidence must be deemed true and considered in the light most favorable to the State, discrepancies and contradictions therein are disregarded and the State is entitled to every inference of fact which may be reasonably deduced therefrom." *State v. Witherspoon*, 293 N.C. 321, 326, 237 S.E. 2d 822, 826 (1977); *State v. Etheridge*, 319 N.C. 34, 352 S.E. 2d 673 (1987).

We have addressed this specific question in two prior cases, *State v. Slone*, 76 N.C. App. 628, 334 S.E. 2d 78 (1985) and *State v.*

*Campbell*, 51 N.C. App. 418, 276 S.E. 2d 726 (1981). In each of these cases we noted that "[a] defendant's purpose, being a mental attitude, is seldom provable by direct evidence and must ordinarily be proven by inference." *State v. Campbell*, 51 N.C. App. at 421, 276 S.E. 2d at 729.

Here the evidence tends to show that defendant moved the victim to an isolated room, where he pulled her underwear down and rubbed her vagina with his finger. We conclude this evidence was sufficient to permit the jury to infer defendant took indecent liberties with the victim for the purpose of arousing or gratifying his sexual desire. We overrule this assignment of error.

## VI.

[10] Finally, defendant contends the State's use of hearsay evidence violated his right to confrontation under the Sixth Amendment of the United States Constitution and Article I, § 25 of the North Carolina Constitution.

We find this argument to be without merit. The U.S. Supreme Court in *Ohio v. Roberts*, 448 U.S. 56, 65 L.Ed. 2d 597 held that the admission of hearsay evidence at trial did not violate the confrontation clause, when the declarant was unavailable to testify and his statement bore adequate "indicia of reliability." The U.S. Supreme Court further said that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 66, 65 L.Ed. 2d at 608.

As previously discussed, the hearsay evidence presented by the State was admissible under established exceptions to the hearsay evidence rule. Accordingly, we overrule this assignment of error.

For the reasons given above, we conclude defendant received a fair trial free from prejudicial error.

No error.

Judges JOHNSON and PHILLIPS concur.