MARJORIE SMITH v. AMOS PASS, FIRST PIEDMONT CORPORATION AND DENNIS WADE MARSHALL

No. 8817SC1262

(Filed 5 September 1989)

1. **Evidence § 19.2— evidence of similar accident**
    In an action to recover for injuries received by a passenger when the car in which she was riding struck a garbage truck stopped partly on the paved road facing oncoming traffic, the trial court did not err in admitting evidence that another garbage truck placed in the same location at the same time the next day was also struck by an oncoming vehicle.

SMITH v. PASS

[95 N.C. App. 243 (1989)]

2. **Automobiles and Other Vehicles § 45.2 — collision with garbage truck — prior procedures for garbage collection — relevancy**

In an action to recover for injuries received by a passenger when the car in which she was riding struck a garbage truck stopped partly on the paved road facing oncoming traffic while a customer's garbage was being collected, testimony that the customer's garbage had previously been picked up by driving the truck into her driveway but that such practice ceased after the customer requested that her driveway not be used was relevant to the issue of whether defendant garbage truck driver violated statutes pertaining to parking on the highway, N.C.G.S. § 20-161(a) and (b), and whether he acted negligently. N.C.G.S. § 8C-1, Rule 401.

3. **Evidence §§ 19.1, 47 — exclusion of testimony by meteorologist — visibility conditions — effect of sun's glare on drivers**

The trial court did not err by excluding a meteorologist's testimony concerning visibility conditions on the date of an accident and two years later on the ground that there was an insufficient showing of similarity of conditions on the two dates. Nor did the trial court err in excluding the meteorologist's opinion testimony about the effect of the sun's glare on drivers since the witness's credentials as a meteorologist made him no more qualified than any other driver to offer such an opinion. N.C.G.S. § 8C-1, Rule 702.

4. **Evidence § 15.1 — sun's effect at accident scene — admissibility of testimony**

The trial court did not err in admitting testimony by the investigating officer and a medical technician concerning the effect of the sun on visibility at an accident scene where both witnesses arrived at the scene within an hour after the accident and approached the scene from the same direction as the automobile in which plaintiff was riding.

5. **Evidence § 50.2 — cause of injury — expert testimony**

The trial court properly admitted opinion testimony by an orthopedic surgeon who diagnosed a fracture of plaintiff's thoracic vertebrae a month after plaintiff was involved in a collision that the fracture was caused by the collision.

SMITH v. PASS

[95 N.C. App. 243 (1989)]

**6. Damages § 13.1— admissibility of medical bills**

Plaintiff's medical bills from an orthopedic surgeon for the diagnosis and treatment of plaintiff's thoracic fracture were admissible where there was evidence that the fracture was caused by the accident in question.

**7. Damages § 16.1— cause of injuries— evidence sufficient without expert testimony**

A driver's evidence of the cause of his injuries was sufficient for the jury without the presentation of expert medical testimony where he testified that when the collision occurred, he was hit on the forehead, chest and stomach and sustained a deep gash in his leg, and that he was hospitalized for six days and received stitches and a cast on his leg as a result of these injuries.

**8. Damages § 16.3— lost profits— sufficient evidence**

A van owner's evidence was sufficient to support an instruction on lost earnings where he testified that his sole source of income was his van pool business; he was unable to operate the van and had no customers for three and a half months after the van collided with defendants' garbage truck; and although the volume of his business fluctuated from week to week, he testified about his past average weekly income from the business.

**9. Automobiles and Other Vehicles § 90.15— instructions— driver's duty of care**

There was no error in the trial court's instruction that "the conduct of each driver is to be evaluated in the light of the factors and circumstances with which he is confronted at the time and his duty is to exercise the ordinary care required of a driver confronted with those circumstances."

**10. Automobiles and Other Vehicles § 50.3— garbage truck— improper parking on road— jury question**

Whether a garbage truck was stopped at a customer's residence partly on the traveled portion of a road facing oncoming traffic for a necessary purpose so that it was not "parked" in violation of N.C.G.S. § 20-161(a) and (b) was a question for the jury where there was conflicting evidence as to whether alternative means were available for garbage to be collected at the residence.

11. **Automobiles and Other Vehicles § 53.2— failure to drive on right side of road—truck stopped on left side with engine running**

The evidence presented a jury question as to whether a garbage truck driver violated the statute requiring vehicles to be driven on the right side of the road, N.C.G.S. § 20-146, where there was evidence that the truck was stopped partly on the left shoulder of the road facing oncoming traffic with its engine running.

12. **Automobiles and Other Vehicles § 50.3— garbage truck stopped partly in highway—collision with oncoming vehicle—common law negligence**

Plaintiff's evidence was sufficient for the jury on the issue of defendant garbage truck driver's common law negligence where it tended to show that defendant stopped his truck at a customer's house partially in the traveled portion of the highway facing oncoming traffic; defendant had picked up garbage on that stretch of road many times in the past during the same time of day and was aware of the layout of the road and that the sun was up and facing oncoming traffic; alternative methods of picking up garbage at the customer's house were available and had been used in the recent past; and the garbage truck was struck head-on by the right front portion of a van in which plaintiff was a passenger.

13. **Automobiles and Other Vehicles § 88— driving with sun in face—not contributory negligence as matter of law**

A van driver was not contributorily negligent as a matter of law in striking a garbage truck stopped partially in the van's lane of travel where the van driver testified that his vision was obscured by the sun and that, although he pulled down the van's visor and slowed his vehicle, he did not see the garbage truck until moments before his van hit the truck.

14. **Appeal and Error § 48— evidentiary rulings—effect of jury finding of no negligence**

The driver of a van in which plaintiff was a passenger was not prejudiced by the trial court's evidentiary rulings in plaintiff's action to recover for injuries received in a collision with a garbage truck where the jury found that the van driver was not negligent.

SMITH v. PASS

[95 N.C. App. 243 (1989)]

APPEAL by defendants, First Piedmont Corporation (Piedmont) and Dennis Wade Marshall (Marshall) and cross appeal by defendant, Amos Pass (Pass) from *John (Joseph R.), Judge.* Judgment and Order entered 12 April 1988 in Superior Court, CASWELL County. Heard in the Court of Appeals 17 May 1989.

*Ramsey, Cioffi & Abell, by Andrew P. Cioffi and James E. Ramsey, for plaintiff-appellee.*

*Henson Henson Bayliss & Teague, by Perry C. Henson and Gary K. Sue, for defendant-appellants, First Piedmont Corporation and Dennis Marshall.*

*Adams Kleemeier Hagan Hannah & Fouts, by Joseph W. Moss and Trudy A. Ennis, for defendant-appellee, Amos Pass.*

LEWIS, Judge.

This is a negligence action. The record reveals the following sequence of events. On 30 December 1985 at approximately 8:35 a.m. defendant Dennis Marshall (Marshall), while within the scope of his employment, was operating Piedmont's garbage truck on Rural Road 1554 in Caswell County. He was traveling in a westerly direction. In order to pick up the garbage at customer Annie Swann's (Swann) house, Marshall pulled the truck off onto the opposite shoulder of the paved road in front of the Swann's driveway so that it was facing oncoming eastbound traffic. Marshall and his co-worker exited the vehicle, loaded the garbage and were preparing to drive off when a passenger van driven by Pass and occupied by plaintiff, Marjorie Smith (Smith) and nine other passengers collided head-on with the right front portion of Piedmont's truck. Plaintiff and Pass allegedly suffered physical injury and Pass' van was damaged.

Plaintiff sued Pass for negligence alleging, among other things, failure to properly control the van, failure to maintain a proper lookout, excessive speed and reckless driving. Plaintiff also sued Marshall and Piedmont alleging common law negligence and negligence *per se* for violations of G.S. 20-161(a) and (b); and 20-146 of the North Carolina Motor Vehicle Code. Pass and Piedmont/Marshall filed cross-claims against each other alleging negligence, contributory negligence, indemnification and contribution.

The case was tried before a jury which found Piedmont, through its employee Marshall, negligent and awarded $32,500 to plaintiff

Smith and $15,000 to Pass. Pass was found not negligent and not contributorily negligent. On 12 April 1985 the trial court entered an order denying Piedmont/Marshall's motions for directed verdict, judgment notwithstanding the verdict and a new trial. Piedmont/Marshall appeal the entry of judgment and the court's order denying their motions. Pass cross appeals under App. R. 10(d).

I. Piedmont/Marshall Appeal

Piedmont/Marshall bring forth numerous assignments of error which can be divided into three basic categories. The first category involves the trial court's alleged erroneous admission or omission of various evidence and testimony. The second involves the trial court's instructions to the jury. The third deals with the lower court's denial of their post-trial motions.

a. *Evidence*

[1] Piedmont/Marshall allege that the trial court committed prejudicial error in admitting evidence concerning a subsequent accident occurring on 31 December 1985 on this same Rural Road 1554 and involving one of Piedmont's garbage trucks and another vehicle. Specifically, they contend that the facts surrounding the 31 December accident were too dissimilar to the facts of the 30 December accident to permit their admission and alternatively that G.S. 8C-1, Rule 407, which disallows evidence of subsequent remedial action, prohibits their admission.

Our court has held that, "[w]hen substantial identity of circumstances and reasonable proximity in time is shown, evidence of similar occurrences or conditions may, in negligence actions, be admitted as relevant to the issue of negligence." *Murrow v. Daniels*, 85 N.C. App. 401, 405, 355 S.E.2d 204, 208 (1987), *rev'd on other grounds*, 321 N.C. 494, 364 S.E.2d 392 (1988), *quoting* Brandis N.C. Evidence Section 89 (1982).

The evidence here reveals that on 31 December 1985, officers and employees of Piedmont, in an attempt to assess the safety and reasonableness of Marshall's actions on 30 December, placed another garbage truck of similar size and weight in the same location as the truck driven by Marshall the day before, at the same time of day. At approximately 9:00 a.m. a car driven in an easterly direction by George Moore collided with the right front portion of Piedmont's truck. The officer, who investigated both accidents, testified that the road and weather conditions as well as the location

of the truck were nearly identical. Although testimony also revealed that there were some slight differences in the exact size and position of the truck and the time of the accident, we are of the opinion that the similarities in time and circumstances far outweigh the differences. The trial judge properly allowed evidence of the 31 December accident to be admitted.

Further, we note that Piedmont/Marshall's argument as to 8C-1, Rule 407 is without merit. For the purpose of showing negligence, Rule 407 excludes evidence of measures taken after an event which would have made the event less likely to occur. There is no evidence that the actions taken by Piedmont on 31 December 1985 were remedial in nature. Testimony of Piedmont's own president, Ben Davenport (Davenport) reveals that the purpose of their actions was to assess whether Marshall's activities on 30 December were safe and proper. Thus, 8C-1, Rule 407 is not applicable to this situation.

[2] Piedmont/Marshall next argues that the trial court erred in admitting testimony pertaining to other means and procedures used to pick up garbage at Swann's residence. They contend that such evidence is irrelevant and thus inadmissible under our rules of evidence. Alternatively they contend that even if relevant, the evidence's probative value is substantially outweighed by its prejudicial effect.

Marshall was allowed to testify at trial that until approximately one year prior to the 30 December accident, Swann's garbage was picked up by driving the truck up into her driveway but that such practice ceased after Swann requested the truck no longer use her driveway. Marshall stated that after he became aware of Swann's request he never used her driveway to pick up her garbage. Swann confirmed that she asked Piedmont not to use her drive but also testified that as recently as one to two weeks before the 30 December accident Piedmont employees used her driveway to pick up her garbage.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." G.S. 8C-1, Rule 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

waste of time, or needless presentation of cumulative evidence." G.S. 8C-1, Rule 403. Whether to exclude evidence under Rule 403 is a determination within the sound discretion of the trial court and our Court will not disturb its ruling absent a showing that such ruling was so arbitrary that it could not have resulted from a reasoned decision. *State v. Jones*, 89 N.C. App. 584, 367 S.E.2d 139 (1988).

Plaintiff alleged in her complaint that Piedmont/Marshall violated G.S. 20-161(a) and (b) which prohibits parking a vehicle on the travelled portion of a highway. Conversely, Piedmont/Marshall argued that the garbage truck was not "parked" under the meaning of the statute but had only stopped momentarily to pick up Swann's garbage and that Swann's instructions coupled with the physical limitations of the surrounding landscape made it necessary for Marshall to stop as he did.

In construing G.S. 20-161(a) our courts have defined "parking" to be more than a temporary or momentary stop for a necessary purpose. *Adams v. Mills*, 312 N.C. 181, 322 S.E.2d 164 (1984). In determining whether a violation of G.S. 20-161(a) has occurred, the trier of fact must consider whether the stop, even if temporary, was for a necessary purpose and " 'under such conditions that it [was] impossible to avoid leaving such vehicle in such a position.' " *Melton v. Crotts*, 257 N.C. 121, 129, 125 S.E.2d 396, 402 (1962), *quoting Capital Motor Lines v. Gillette*, 235 Ala. 157, 177 So. 881 (1935).

We find that evidence of the alternative method for collecting Swann's garbage prior to the accident as well as testimony revealing Marshall's rationale for stopping as he did on 30 December is relevant not only to the issue of whether Piedmont/Marshall violated G.S. 20-161(a) and (b) but also to the issue of Marshall's alleged negligent conduct and is thus admissible under G.S. 8C-1, Rule 401. Further, we find that defendant failed to show that the judge abused his discretion in allowing the evidence to be admitted or that the effect of its admission was so prejudicial that it outweighed its probative value so as to warrant exclusion under G.S. 8C-1, Rule 403.

[3] Piedmont/Marshall's next contention is that the court erred in excluding certain testimony of expert meteorologist William Haggard (Haggard) concerning weather conditions, sun location, visibility and steps drivers could take to eliminate the glare of the early

morning sun. The record reveals that at the conclusion of *voir dire* examination, the trial judge allowed Dr. Haggard to testify as to his observations as a meteorologist of the 30 December 1985 weather records as well as to the various atmospheric and climate conditions as they existed on 30 December 1985 and 1987, and as to his findings with regard to the location of the sun in terms of degrees, horizon and movement from east to west. The only testimony the judge excluded was Haggard's opinion testimony regarding visibility and glare finding that there had not been a sufficient show of similarity of conditions on 30 December 1985 and on 30 December 1987.

G.S. 8C-1, Rule 702 permits a witness qualified as an expert to offer opinion testimony about his or her area of expertise if the trier of fact determines such testimony would be helpful to the jury. The judge is given wide latitude of discretion when making a determination about the admissibility of expert testimony. *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984). A determination of whether the opinion evidence is sufficiently reliable and relevant is also within the judge's discretion. *State v. Catoe*, 78 N.C. App. 167, 336 S.E.2d 691 (1985), *cert. denied*, 316 N.C. 380, 344 S.E.2d 1 (1986).

We have reviewed the record and find that the trial court did not abuse its discretion in excluding Haggard's testimony regarding visibility conditions in 1985 and 1987. Visibility, unlike the mathematical calculations of the angle and location of the sun to which Haggard was allowed to testify, calls for a more subjective judgment involving personalized observations of certain physical conditions. The court also did not abuse its discretion in excluding Haggard's testimony about the effect of the sun's glare on drivers. Expert witness testimony is admissible if an expert, given his expertise, is better qualified than the jury to form an opinion. *Mills v. New River Wood Corp.*, 77 N.C. App. 576, 335 S.E.2d 759 (1985). The effect of the sun's glare on drivers is an effect to which any driver heading into the direction of the sun can attest. In this situation, Haggard's expert credentials as a meteorologist made him no more qualified than any other driver to offer an opinion. Defendant's argument is without merit.

[4]  Piedmont/Marshall's next contention is that the court erred in admitting the testimony of Trooper Williamson (Williamson), the officer at the scene of the accident, and Stephen Russell (Russell),

a medical technician also at the scene, concerning the condition of the sun and effects on visibility on 30 December 1985. Specifically, defendants argue that there was no showing of identity of circumstances or proximity of time between the accident and their arrival at the scene. We do not agree.

Whether to admit such evidence is again within the sound discretion of the trial judge. *Jones, supra.* Here, the evidence showed that both Russell and Williamson arrived within an hour of the accident and approached the scene from the same direction as Pass. While it cannot be disputed that the exact position of the sun would have shifted somewhat, we do not think the time frame so great or circumstances so changed that admission of these witnesses' testimony amounted to an abuse of discretion. This assignment of error is overruled.

Piedmont/Marshall next assign as error the trial court's admission of the medical testimony and medical bills of Dr. William Bruch (Bruch). They contend that there was no competent medical testimony establishing a causal connection between the accident and a fracture of plaintiff's thoracic vertebrae diagnosed by Bruch approximately one month after the accident and further that Bruch did not actually "treat" plaintiff for any injuries incurred as a result of the 30 December collision. We do not agree.

[5] Expert opinion testimony was received from Bruch who saw plaintiff in his professional capacity after the 30 December accident. G.S. 8C-1, Rule 702 allows a witness qualified as an expert to testify in the form of an opinion. A medical expert is competent to testify as to the cause of suffering alleged by plaintiff. *Spivey v. Newman,* 232 N.C. 281, 59 S.E.2d 844 (1950). In this case, Bruch, qualified as an expert in the field of orthopedic surgery, testified that in his opinion, based on his evaluation of plaintiff's medical condition, x-rays, bone scan and plaintiff's medical history, the thoracic fracture, originally undiagnosed by doctors immediately after the accident, was caused by the collision in question. Piedmont/Marshall's argument is without merit.

Additionally the court did not err in admitting Bruch's testimony regarding his treatment of plaintiff nor in admitting plaintiff's medical bills from Bruch. Black's Law Dictionary (5th ed. 1979) defines "treatment" as "[a] broad term covering all the steps taken to effect a cure of an injury . . . including examination and diagnosis as well as application of remedies." Evidence at trial showed that

plaintiff first visited Bruch on 28 January 1986 complaining of thoracic or mid-back pain. Bruch took a medical history, conducted a physical examination, ordered x-rays and a bone scan, and on one occasion prescribed pain medication. Although there was also evidence that plaintiff sought Bruch's services on the advice of her attorney, we believe there was a sufficient showing that Bruch did in fact "treat" plaintiff and that his testimony was admissible.

[6] Likewise, we hold that Bruch's medical bills were properly admitted. Medicals bills are admissible where lay and medical testimony of causation is provided. See *Taylor v. Boger*, 289 N.C. 560, 223 S.E.2d 350 (1976). In this case, Bruch provided expert testimony that plaintiff's thoracic fracture was caused by the 30 December accident. Plaintiff also testified about experiencing back pain immediately after the collision and in the weeks following. This assignment of error is overruled.

Defendants allege the court erred in admitting the orthopedic summary portion of the hospital medical records regarding plaintiff's case because the summary constituted hearsay. The summary was not admitted for the truth of the matter asserted but to corroborate plaintiff's testimony and the jury was given a limiting instruction to that effect. Admission of the summary was proper in this case.

b. *Jury Instructions*

Piedmont/Marshall's next category of errors relates to the trial court's jury instructions. Specifically, they contend that the court erred in instructing on Smith's common law and statutory claims of negligence, on defendant Pass' loss of earnings and on the proximate cause of Pass' injuries because in each instance there was insufficient evidence to support such instructions. Additionally, they allege the judge erroneously instructed the jury on Pass' duty of care. We have reviewed all Piedmont/Marshall's contentions and find them without merit and further find that the judge's instructions are supported by applicable North Carolina law and the facts in this case.

A trial judge is required to explain the law and apply it to the evidence on the substantive issues of the action and must submit the issue with appropriate instructions if there is evidence, viewed in the light most favorable to plaintiff, to support a reasonable inference of each element of plaintiff's claims. *Adams, supra*. We

have reviewed the record in this case and find that Smith's complaint sufficiently alleged common law negligence as well as violations of G.S. 20-161(a) and (b) and G.S. 20-146 and she presented sufficient evidence at trial to create a reasonable inference of the elements of these claims. The judge properly instructed the jury on Smith's various causes of action.

[7] Pass in his countersuit also presented sufficient evidence of lost earnings and proximate cause. Pass testified that when the collision occurred he was hit on his forehead, chest and stomach and sustained a deep hole or gash in his leg. He was taken to the hospital where he was treated for these injuries and hospitalized for six days. He also received stitches and a cast on his leg. Pass offered no expert medical testimony. However, in this case, where Pass' injuries were obvious and apparently did not involve complicated diagnostic procedures or treatment, we hold that expert medical testimony as to the cause of his injuries was not necessarily required. "There are many instances in which the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of." *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1965).

[8] Additionally, Pass offered sufficient evidence as to his lost earnings. He testified that his sole source of income was his van pool business and that from the date of the accident until he resumed driving the van on 15 April 1985 he was unable to operate the van and had no customers. He also testified that the volume of his business fluctuated from week to week but provided testimony about his past average weekly income from the business. Evidence of loss of business is competent and admissible in determining damages for loss of time or impaired earning capacity. *Jernigan v. R.R. Co.*, 12 N.C. App. 241, 182 S.E.2d 847 (1971). " 'The fact that defendant did not testify from business records and accounts does not render his testimony too speculative. Plaintiff had full opportunity to cross-examine him with respect to all phases of the business.' " *Id.* at 244, 182 S.E.2d at 849, *quoting Smith v. Corsat*, 260 N.C. 92, 99, 131 S.E.2d 894, 899 (1963).

[9] Further, the judge's instruction with regard to a driver's duty of care comports with North Carolina law. The judge here instructed the jury "[t]he conduct of each driver is to be evaluated in the light of the factors and circumstances with which he is confronted at the time and his duty is to exercise the ordinary care required

of a driver confronted with those circumstances." This language is almost a verbatim recitation of our holding in *Allen v. Pullen*, 82 N.C. App. 61, 345 S.E.2d 469 (1986), *disc. rev. denied*, 318 N.C. 691, 351 S.E.2d 738 (1987). In that case, our Court was confronted with the issue of whether the plaintiff-driver was contributorily negligent as a matter of law in failing to stop when her visibility was obscured by a cloud of dust. Writing for the panel, Judge Martin noted the several occasions the appellate courts had been confronted by the issue of a driver's contributory negligence when his or her vision became obscured and stated:

> It is apparent from these varied decisons that there is no absolute universal rule which may be applied; the conduct of each motorist must be evaluated in the light of unique factors and circumstances which he or she is confronted. Only in the clearest cases should a failure to stop completely be held to be negligent as a matter of law.

*Id.* at 68, 345 S.E.2d at 474. We find no error in the judge's instruction.

c. *Directed Verdict/Judgment Notwithstanding the Verdict and A New Trial*

Piedmont/Marshall's final category of assigned errors involves the court's refusal to grant their motions for a directed verdict, judgment notwithstanding the verdict and new trial regarding Smith's action and Pass' cross-claim. Again we have reviewed Piedmont/Marshall's various contentions and find no error.

A motion for directed verdict pursuant to G.S. 1A-1, Rule 50(a) presents an identical question for trial and appellate courts — whether plaintiff's evidence, considered in the light most favorable to the non-movant and given every reasonable inference, is sufficient to submit to the jury. *Alston v. Herrick*, 76 N.C. App. 246, 332 S.E.2d 720 (1985), *aff'd*, 315 N.C. 386, 337 S.E.2d 851 (1986). Directed verdicts are seldom appropriate in negligence cases and the court should deny such a motion if it finds any evidence more than a scintilla to support plaintiff's prima facie case. *Clark v. More*, 65 N.C. App. 609, 309 S.E.2d 579 (1983). The above-cited test for determining the sufficiency of the evidence is equally applicable in considering a motion for judgment notwithstanding the verdict pursuant to G.S. 1A-1, Rule 50(b). *Henderson v. Traditional Log Homes*, 70 N.C. App. 303, 319 S.E.2d 290, *disc. rev. denied*, 312 N.C. 622, 323 S.E.2d 923 (1984). Such a motion is cautiously

and sparingly granted. *Investment Properties v. Allen*, 281 N.C. 174, 188 S.E.2d 441 (1972). Additionally, whether to grant a new trial is within the discretion of the trial judge and his ruling will not be disturbed absent a showing of an abuse of discretion. *Coppley v. Carter*, 10 N.C. App. 512, 179 S.E.2d 118 (1971).

[10] In addition to her allegations of common law negligence, Smith alleged Piedmont/Marshall violated G.S. 20-161(a) and (b) which prohibit parking a vehicle on the travel portion of a rural highway and G.S. 20-146 which requires vehicles to be driven on the right side of the road. Piedmont/Marshall contends however that plaintiff failed to show that their truck was "parked" within the meaning of G.S. 20-161(a) and (b) or that the truck was being "driven" within the meaning of G.S. 20-146. We disagree with Piedmont/Marshall's contentions.

As stated previously our courts have construed "parking" under G.S. 20-161 so as to exclude temporary stops for a necessary purpose. *Adams, supra.* Whether a vehicle stopped on the travel portion of the road was for a necessary purpose is "ordinarily a question for the jury unless the facts are admitted." *Id.* at 190, 322 S.E.2d at 170, *quoting Melton v. Crotts*, 257 N.C. 121, 130, 125 S.E.2d 396, 402 (1962). In this case there was conflicting evidence about the necessity of stopping the garbage truck on the shoulder and travel portion of the road facing oncoming traffic or whether alternative means were available for Marshall and his assistant to collect garbage at the Swann residence. Here, the court properly submitted this issue to the jury.

[11] The trial judge also properly submitted the issue of whether Piedmont/Marshall violated G.S. 20-146. Piedmont/Marshall contend that the garbage truck was stopped in the opposite lane of traffic and therefore not being driven within the meaning of the statute. However, the Supreme Court in *State v. Coker*, 312 N.C. 432, 323 S.E.2d 343 (1984) stated:

Although Chapter 20 of the General Statutes contain no definition of 'drive' or 'operate,' 'driver' and 'operator' are defined. In N.C.G.S. 20-4.01(7) 'driver' is defined as the 'operator of a vehicle.' 'Operator' is defined as 'a person in actual physical control of a vehicle which is in motion or which has the engine running.' N.C.G.S. 20-401(25) . . . [W]e are satisfied that the legislature intended the two words to be synonymous.

*Id.* at 436, 323 S.E.2d at 347. In this case there was evidence that while the garbage truck was stopped, the engine was left running. Piedmont/Marshall's argument is without merit.

[12] We further find that there was sufficient evidence for the plaintiff's claims of common law negligence to go to the jury. Considered in the light most favorable to plaintiff, the evidence revealed: 1) Marshall parked or stopped his vehicle partially in the travel portion of the highway facing oncoming traffic; 2) Marshall had picked up garbage on that stretch of road many times in the past during that same time of day and was aware of the layout of the road and that the sun was up and facing oncoming traffic, and 3) alternative methods of picking up garbage at the Swann residence were available and allegedly had been used in the recent past. Based on the foregoing and the evidence presented at trial we hold that the trial judge did not err in denying Piedmont/Marshall's motions for directed verdict and judgment notwithstanding the verdict as to plaintiff's claims nor did he abuse his discretion in denying their motion for a new trial.

[13] Similarly, the trial court correctly denied Piedmont/Marshall's motions as to Pass' counterclaim based on contributory negligence. A directed verdict on the ground of contributory negligence is proper only where the defense is so clearly established that no other reasonable inference can be drawn. *Daughtry v. Turnage,* 295 N.C. 543, 246 S.E.2d 788 (1978). Here Pass presented evidence that as he proceeded up Rural Road 1554 his vision was obscured by the sun and that although he pulled down the van's sun visor and slowed his vehicle he did not see the garbage truck until moments before his van hit the truck. Our court in *Clark v. More, supra,* a case in which the plaintiff's car struck defendant's truck abandoned in the plaintiff's lane of traffic, affirmed the trial court's denial of the defendant's directed verdict motion and stated:

> While contributory negligence on the part of plaintiff could be inferred in that he continued driving with the blinding sun in his face, that is not the only reasonable inference to be drawn from the evidence. The jury could, and apparently did, infer that plaintiff was exercising the ordinary care required of a reasonably prudent person who finds himself driving with blinding sunlight in his face.

*Id.* at 611, 309 S.E.2d at 581. This assignment of error is overruled.

ANIMAL PROTECTION SOCIETY v. STATE OF NORTH CAROLINA

[95 N.C. App. 258 (1989)]

II.  Pass' Cross-Appeal

[14]  Finally we address Pass' cross-appeal. Pass excepts and assigns error to the trial court's admission and omission of various testimony offered at trial. An appellant must not only show error but that the alleged error was prejudicial and amounted to a denial of a substantial right. *Gregory v. Lynch*, 271 N.C. 198, 155 S.E.2d 488 (1967). Given the fact that the jury ultimately found Pass not to be negligent in this case, we find that the court's various evidentiary rulings did not prejudice Pass and that he received a fair trial free from prejudicial error.

Affirmed.

Judges BECTON and PHILLIPS concur.