STATE OF NORTH CAROLINA v. JERRY RONALD ROGERS

No. 9115SC1160

(Filed 6 April 1993)

1. **Constitutional Law § 349 (NCI4th)— child sex abuse—victim unable to testify—admission of victim's statements— Confrontation Clause**

    Where a child sex abuse victim was unavailable to testify at trial due to her incompetency as a courtroom witness, thus making necessary the admission of her statements to her mother, a pediatrician, an expert in child psychology, and the mother of a playmate, the first prong of the Confrontation Clause test of the Sixth Amendment to the United States Constitution and Article I, Section 23 of the North Carolina Constitution was satisfied and the inquiry became whether the trial court properly admitted the out-of-court statements under one or more of the firmly rooted exceptions to the hearsay rule.

2. **Evidence and Witnesses § 929 (NCI4th)— child sex abuse victim—unable to testify—out of court statements—excited utterances**

    Statements of a child sex abuse victim to a playmate's mother were properly admitted under N.C.G.S. § 8C-1, Rule 803(2) where the child was incompetent as a witness and the testimony indicated that the child's statements were spontaneous and not in response to any questioning on the part of the adult to whom they were made; related to an alleged sexual assault, a "startling event," particularly to a young child; and were made only three days after the assault.

3. **Evidence and Witnesses § 961 (NCI4th)— child sexual abuse victim—unable to testify—out of court statements—medical diagnosis exception—statements to doctor**

    Out of court statements to a pediatrician by a child sexual abuse victim who was not competent to testify were admissible under N.C.G.S. § 8C-1, Rule 803(4) where the victim's mother summoned help from the police on the day after the alleged sexual encounter; after a brief interview, the police recommended that the victim be taken to the hospital; the victim was examined at the hospital by the pediatrician to determine whether she had been sexually molested; the victim made

statements to the pediatrician during the examination; and, although the pediatrician's examination revealed no physical findings consistent with allegations of sexual abuse, he opined that the victim was a sexually molested child based on his interview during the examination. The doctor used the statements to make his diagnosis and his testimony was admissible.

4. **Evidence and Witnesses § 961 (NCI4th)— child sexual abuse victim—unable to testify—out of court statements—medical diagnosis exception—statements to mother**

The out of court statements of a child sexual abuse victim, who was not competent to testify, to her mother were admissible under N.C.G.S. § 8C-1, Rule 803(4) where the victim had acted strange and withdrawn, would not talk, and cried a lot on the day of the incident and the following day, her mother repeatedly asked what was wrong on the day after the incident, the victim finally told her that "[defendant] hurt me" and pointed to her chest and between her legs, the mother immediately located a police officer and told him that she wanted the victim's comments investigated, and police questioning resulted in the victim, her mother, and police social workers being taken to the hospital, where the victim was diagnosed as having been sexually abused. The key factor is whether the statements resulted in the child receiving medical treatment and/or diagnosis; despite the fact that the victim's mother first found a police officer, the statements resulted in the victim being taken to the hospital the same day and receiving a medical diagnosis.

5. **Evidence and Witnesses § 961 (NCI4th)— child sexual abuse victim—unable to testify—out of court statements—medical diagnosis exception—statements to psychologist**

Statements by a child sexual abuse victim, who was not competent to testify, to a psychologist were admissible under N.C.G.S. § 8C-1, Rule 803(4) where the witness testified as an expert in clinical and child psychology and stated that the purpose of the victim's visits with her was to obtain therapy due to behavior problems that she had been exhibiting, that the statements in question were made during these sessions, and that the treatment continued until the behavior improved. Although the visits undoubtedly prepared the psychologist

for her testimony at trial and contributed to the prosecution of defendant, these were not the primary purposes of the treatment.

6. **Rape and Allied Offenses § 19 (NCI3d) — indecent liberties — evidence sufficient**

The trial court properly submitted the charge of indecent liberties to the jury where the State presented evidence that the victim told her mother that "[defendant] touched me," pointing to her chest and between her legs; that she told a playmate's mother that defendant hurt her, pointing to "her vagina type thing"; and that she told Dr. Runyan that something bad had happened in the bathroom, pointed to her crotch, said "he hurt me here," indicating that defendant had touched her chest as well, and mentioned defendant's "ding-dong." The Court of Appeals rejected any contention that a child's failure to say expressly that a defendant touched a particular place on her body (as opposed to pointing to the body part at issue and saying she was touched, or hurt, there), or that the child was unclothed when the touching occurred, renders the State's evidence insufficient on the touching element of indecent liberties. Evidence that defendant touched the victim's chest and vaginal area while alone in the bathroom with her was sufficient to permit the jury to infer that defendant's purpose in doing so was to arouse himself or to gratify his sexual desire.

**Am Jur 2d, Assault and Battery §§ 24 et seq.**

Appeal by defendant from judgment entered 13 May 1991 in Orange County Superior Court by Judge J. Milton Read, Jr. Heard in the Court of Appeals 3 February 1993.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General James C. Gulick, for the State.*

*Public Defender James E. Williams, Jr., by Assistant Public Defender M. Patricia DeVine, for defendant-appellant.*

GREENE, Judge.

Defendant appeals from a judgment entered 13 May 1991, which judgment is based on jury verdicts convicting defendant of taking indecent liberties with a child, N.C.G.S. § 14-202.1 (1986), a Class H felony with a maximum term of ten years and a presumptive

term of three years, and of being an habitual felon, N.C.G.S. § 14-7.1 (1986), a Class C felony with a maximum term of fifty years or life and a presumptive term of fifteen years.

Defendant was indicted on charges of first-degree sexual offense, first-degree rape, being an habitual felon, and taking indecent liberties with a child. These charges stemmed from defendant's alleged encounter with five-year-old A.E., who at the time was living with her mother at the same homeless shelter as defendant in Chapel Hill, North Carolina. The cases were consolidated for trial.

On 21 April 1991, upon motion by the State, the trial court conducted a pre-trial hearing to determine the competency of A.E. to be a courtroom witness. The court, after hearing, made the following pertinent findings:

2. From the testimony of [A.E.], the Court finds as a fact that she . . . has seen a Bible but does not know what it is used for. That she does not know the difference between right and wrong. That she does not know what a lie is. And that she does not know what it means to tell the truth. But that she "always tells the truth." That she does not know what it means to testify. That she told her mother what happened to her, but she forgot what she told her mother. That she did not now remember any of what happened and that she does not know what happened to her. She does not remember what she told others about what happened to her and that she forgets what she told them. That she knows [defendant], and that she told her mother that [defendant] hurt her but not that any other people hurt her. That she likes to talk and that she is not scared.

3. The Court finds as a fact that [A.E.] is incapable of understanding and appreciating the meaning of an oath or affirmation and the duty of a witness in court with regard to testifying under oath or affirmation. That she is incapable of expressing herself in court concerning these matters as to be understood and that she is incapable of understanding the duty of a witness in court to tell the truth. That she is unable to articulate and express herself in court and has a lack of memory of the subject matter and that she is not competent to be a witness in these proceedings (NC GS 8C-1,

Rule 601B, and 603) and is also unavailable (NC GS 8C-1, Rule 804).

. . . .

That in this order . . . the Court notes that the special meaning of "competency" with regard to Rule 601[(b)] and Rule 603 relates to the qualifications of a witness to testify at trial and not the ability of the declarant to intelligently and truthfully relate personal information. The Court's ruling . . . in no way addresses the qualifications of the child as a declarant out of court to relate truthfully personal information and belief.

The court ordered that A.E. could not testify at trial. ·

At trial, the State presented the testimony of A.E.'s mother, who stated that on 4 September 1990, at approximately 4:00 p.m., she and A.E. and three men were at Sutton's drugstore in Chapel Hill when defendant arrived. A.E. and her mother had known defendant since they began staying at the homeless shelter approximately one week earlier. Defendant sat down and talked for a few minutes, and when A.E. said that she had to go to the bathroom, defendant walked with her. A.E.'s mother testified that when A.E. went into the bathroom, defendant was in the hallway. She assumed when she looked again and did not see defendant that he was in the men's room. After five or ten minutes, A.E.'s mother went to the bathroom area, knocked on the bathroom door, and asked A.E. if she was all right. A.E. "said she was fine." When A.E. came back to the table, she was "fidgety and jumpy," and said she was "okay." Her demeanor was slightly different. Approximately five minutes after A.E. returned to the table, defendant returned and then left the drugstore.

That night, A.E. acted strange and was withdrawn, would not talk, and cried a lot. She did not want to take a bath, had nightmares, and "just latched onto" her mother. The next day, A.E. was still acting strange and withdrawn, and her mother kept asking her what was wrong. Finally, A.E. said that "[defendant] hurt" her. When asked how she had been hurt, A.E. said that [defendant] "touched her chest." According to A.E.'s mother, A.E. then "pointed down between her legs . . . then started to say something about a ding-a-ling." At that point, A.E.'s mother "cut [A.E.] off and told her to hold it," that she was going to get a police officer. A.E.'s mother encountered officer Melvin Smith on

the street and told him that she wanted her daughter's comments investigated. Officer Smith called the crisis unit. A.E. and her mother were taken to the police station, where A.E. was questioned and then taken to the hospital. The trial court, over defendant's objection, ruled the foregoing testimony regarding A.E.'s statements to her mother admissible pursuant to North Carolina Rule of Evidence 803(4), the hearsay exception for statements made for the purpose of medical diagnosis or treatment.

A.E.'s mother also testified that, prior to the alleged incident, A.E. had had nightmares and was afraid of the dark. She testified that both A.E. and A.E.'s brother had been physically and sexually abused by their father. When they began living at the shelter, the entire family was being treated by a therapist for traumas occurring during the past year. On the night of the alleged incident, A.E.'s mother did not notice any bleeding or injuries, but A.E. told her that "it hurt to go pee."

Other evidence presented by the State included the testimony of pediatrician Desmond Runyan, supervisor of the child abuse clinic at the University of North Carolina Hospital and an expert in the area of pediatrics and child abuse. Dr. Runyan testified that he examined A.E. on the afternoon of 5 September 1990, and that when he asked the child what had happened, she said that she "had been touched by [defendant]," pointing to her genital area and her chest. A.E. also demonstrated sexual intercourse with anatomically correct dolls, which surprised Dr. Runyan because no one had ever indicated to him that intercourse had occurred. A.E. told Dr. Runyan that her "private part" had been penetrated by defendant's penis and that she had been bleeding; however, his physical examination revealed no evidence of trauma, bruising, or abrasion. The trial court, over defendant's objection, admitted the testimony of Dr. Runyan regarding the statements made to him by A.E. pursuant to Rule 803(4). Dr. Runyan testified that in his opinion, A.E. had been sexually abused.

Marjorie Dekeersgieter testified that she had "heard what had happened" to A.E. and had approached A.E.'s mother, whom she did not know, to ask if she could keep A.E. two afternoons a week to play with her young children. On one of these visits, A.E. volunteered to Dekeersgieter that "she had been hurt," mentioning defendant's name and pointing to her vaginal area. The trial court, over defendant's objection, admitted this testimony re-

garding A.E.'s statements pursuant to evidence Rule 803(2), the hearsay exception for excited utterances.

Jane Tillotson, an expert in the field of clinical and child psychology, testified that she began to work with A.E. on 7 November 1990, meeting once per week for one hour. On 19 December 1990, A.E. mentioned defendant for the first time, telling Tillotson that "[defendant] hurt me. He put his ding-dong in my private parts." A.E. said that only defendant and her father ever hurt her that way. The court admitted this testimony pursuant to Rule 803(4). Tillotson stated that A.E.'s family "has lived in a chronic chaotic environment." In Tillotson's opinion, A.E. had been sexually abused.

At the close of the State's evidence, the trial court denied defendant's motion to dismiss the charges. Defendant presented evidence, in relevant part, which established that A.E.'s mother had given inconsistent accounts of the alleged 4 September 1990 incident to the Department of Social Services. A.E.'s mother told one social worker that on the day of the alleged incident, she herself had to use the bathroom at the drugstore and asked a friend to watch A.E. When she returned, A.E. was gone and the friend said that defendant had walked off with her. Defendant's evidence also established that when she was four years old, A.E. spent seven months in foster care due to her brother's physically abusive behavior toward her, and that A.E. at that time manifested symptoms of being sexually abused by her father, including the insertion of Barbie dolls into her vagina and frequent masturbation.

At the close of all the evidence, the trial court granted defendant's motion for a directed verdict on the charge of first-degree sexual offense, but denied defendant's motion to dismiss all remaining charges. The jury found defendant not guilty of first-degree rape, guilty of taking indecent liberties with a child, and guilty of being an habitual felon. The trial court consolidated these offenses for judgment and sentenced defendant to a term of eighteen years. Defendant appeals.

---

The issues presented are whether the trial court (I) properly admitted evidence of out-of-court statements made by A.E., whom the trial court declared incompetent to testify, to A.E.'s mother, Dr. Runyan, Marjorie Dekeersgieter, and Jane Tillotson; and (II) erred in denying defendant's motion to dismiss the charge of indecent liberties for lack of substantial evidence.

I

[1]  Defendant argues that the trial court committed prejudicial error by allowing A.E.'s mother, Dr. Runyan, Marjorie Dekeers-gieter, and Jane Tillotson to testify regarding out-of-court statements made by A.E., including statements that "[defendant] hurt me." According to defendant, the statements are hearsay, not falling within any statutory exception to the hearsay rule, and were therefore inadmissible. Defendant also argues that, even if this Court determines that A.E.'s statements fall within a hearsay exception, due to the circumstances of this case, the statements are inherently unreliable and their admission violated the Confrontation Clause of the United States Constitution and Article I, Section 23 of the North Carolina Constitution.

We reject at the outset defendant's intimation that the trial court's finding that A.E. was incompetent as a witness renders A.E.'s out-of-court statements per se, or even presumptively, unreliable. We also reject that a finding of incompetency under the standards set forth in Rule 601(b) is inconsistent as a matter of law with a finding that the child may nevertheless be qualified as a declarant out-of-court to relate truthfully personal information and belief. Rule 601(b), as the trial court in the instant case properly found, addresses the competency of a witness to "express[ ] himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him," or to "understand[ ] the duty *of a witness* to tell the truth." N.C.G.S. § 8C-1, Rule 601(b) (1992) (emphasis added). Although a child's inability to communicate to the jury at the time of trial "might be relevant to whether [an] earlier hearsay statement possessed particularized guarantees of trustworthiness, a per se rule of exclusion would . . . frustrate the truth-seeking purpose of the Confrontation Clause . . . ." *Idaho v. Wright*, 497 U.S. 805, 825, 111 L. Ed. 2d 638, 658 (1990).

Statements, other than ones made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted are hearsay and are inadmissible except as provided by statute or the rules of evidence. N.C.G.S. § 8C-1, Rules 801 and 802 (1992).

However, in a criminal trial where the person making the out-of-court statements does not testify, the State is prohibited, by virtue of the Confrontation Clauses of the State (Article I, Section 23) and Federal (Sixth Amendment) Constitutions,

from introducing hearsay evidence unless the proponent of the testimony shows "the necessity for using the hearsay declaration" and "the inherent trustworthiness of the declaration."

*In re Lucas*, 94 N.C. App. 442, 446, 380 S.E.2d 563, 565-66 (1989) (citations omitted); *see also Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608 (1980); *Wright*, 497 U.S. at 814-15, 111 L. Ed. 2d at 651-52. Thus, even if an out-of-court statement properly falls within an exception to the hearsay rule, it nonetheless must be excluded at a criminal trial if it infringes upon the defendant's constitutional right to confrontation. *See Lucas*, 94 N.C. App. at 447, 380 S.E.2d at 566; *accord Wright*, 497 U.S. at 814, 111 L. Ed. 2d at 651.

With regard to the first prong of the Confrontation Clause test — necessity — our Courts have held consistently that the unavailability of a child witness in a sexual abuse trial due to incompetency adequately demonstrates the necessity for using the child's hearsay declaration. *See, e.g., State v. Deanes*, 323 N.C. 508, 525, 374 S.E.2d 249, 260 (1988), *cert. denied*, 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989); *State v. Gregory*, 78 N.C. App. 565, 568, 338 S.E.2d 110, 112-13 (1985), *disc. rev. denied*, 316 N.C. 382, 342 S.E.2d 901 (1986); *State v. Jones*, 89 N.C. App. 584, 589-90, 367 S.E.2d 139, 143 (1988); *Lucas*, 94 N.C. App. at 447, 380 S.E.2d at 566; *accord Wright*, 497 U.S. at 814-15, 111 L. Ed. 2d at 651-52. Our Courts also have held that statements admissible under a traditional, or "firmly rooted," hearsay exception are deemed inherently trustworthy and thus, without further inquiry, satisfy the reliability prong of the Confrontation Clause test. *Jones*, 89 N.C. App. at 598, 367 S.E.2d at 147-48; *see also Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608. However, because the residual exception to the hearsay rule, N.C.G.S. § 8C-1, Rule 803(24), is not firmly rooted in our jurisprudence, the admissibility under this exception of out-of-court statements of a child determined to be unavailable to testify at trial "require[s] a case-by-case examination of the facts" to ensure that the elements of the Confrontation Clause are fully satisfied. *Deanes*, 323 N.C. at 526, 374 S.E.2d at 261; *State v. Holden*, 106 N.C. App. 244, 248-52, 416 S.E.2d 415, 418-20, *disc. rev. denied*, 332 N.C. 669, 424 S.E.2d 413 (1992); *accord Wright*, 497 U.S. at 817, 111 L. Ed. 2d at 653 (residual exception to hearsay rule not firmly rooted); *but cf. State v. Stutts*, 105 N.C. App. 557, 562-63, 414 S.E.2d 61, 64-65 (1992) (finding witness unavailable to testify *because of an inability to tell truth from fantasy* prevents

as a matter of law the admission of that witness's out-of-court statements under residual exception to hearsay rule). This is so because hearsay evidence which does not fall within a firmly rooted hearsay exception is presumptively unreliable for Confrontation Clause purposes, although it may "meet Confrontation Clause reliability standards if it is supported by a 'showing of particularized guarantees of trustworthiness.' " *Lee v. Illinois*, 476 U.S. 530, 543, 90 L. Ed. 2d 514, 528 (1986) (citation omitted).

In the instant case, because A.E. was unavailable to testify at trial due to her incompetency as a courtroom witness, thus rendering the admission of her statements necessary, the first prong of the Confrontation Clause test of the Sixth Amendment to the United States Constitution and Article I, Section 23 of the North Carolina Constitution is satisfied. The dispositive inquiry, therefore, is whether the trial court properly admitted A.E.'s out-of-court statements under one or more of the firmly rooted exceptions to the hearsay rule. If so, the evidence satisfies both prongs of the Confrontation Clause test and defendant's assignment of error in this regard must be rejected.

The trial court admitted the challenged testimony under the following exceptions to the hearsay rule, which are firmly rooted in our jurisprudence:

> (2) Excited utterance. — A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
>
> . . . .
>
> (4) Statements for Purposes of Medical Diagnosis or Treatment. — Statements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

N.C.G.S. § 8C-1, Rule 803 (1992); *see also Wright*, 497 U.S. at 820-21, 827, 111 L. Ed. 2d at 655-56, 660 (circumstances that surround making of statements admissible under the firmly rooted excited utterance and medical treatment exceptions to hearsay rule render declarant particularly worthy of belief).

## Statements Admitted Under Rule 803(2)

**[2]** Defendant argues that the trial court erred in admitting A.E.'s statements to Marjorie Dekeersgieter under the hearsay exception for excited utterances. Statements properly within the purview of this exception require, from the subjective standpoint of the declarant, "(1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985). With regard to statements made by young children, our Courts have adopted "a broad and liberal interpretation," and in doing so recognize that "the stress and spontaneity upon which the exception is based is often present for longer periods of time in young children than in adults." *Id.* at 87, 337 S.E.2d at 841. Thus, statements made by young children three days after an alleged sexual assault, which relate to the assault, have been deemed admissible under the excited utterance exception. *See id.*

In the instant case, the alleged encounter between A.E. and defendant occurred on 4 September 1990. On 7 September 1990, A.E. volunteered to Marjorie Dekeersgieter that "someone had hurt her; and she did mention [defendant], the name [defendant] and then pointed to her, you know, her vagina type thing." Because this testimony indicates that A.E.'s statements were (1) spontaneous and not in response to any questioning on the part of the adult to whom they were made, (2) related to an alleged sexual assault, a "startling event," particularly to a young child, and (3) were made only three days after such assault, under established law in North Carolina the testimony was properly admitted pursuant to Rule 803(2).

## Statements Admitted Under Rule 803(4)

**[3]** Defendant argues that the trial court erroneously admitted A.E.'s out-of-court statements to her mother, therapist Jane Tillotson, and Dr. Runyan under Rule 803(4).

### *Dr. Runyan*

It is well established that statements made to a physician for the purpose of receiving medical diagnosis or treatment are admissible as an exception to the hearsay rule. *See, e.g., Smith*, 315 N.C. at 83-86, 337 S.E.2d at 839. Where children are examined by physicians for diagnosis and treatment of alleged sexual abuse, details of the offense, including the identity of the offender, pro-

vided by the child during such examination are generally admissible at trial. *Smith*, 315 N.C. at 85, 337 S.E.2d at 840; *State v. Aguallo*, 318 N.C. 590, 594-597, 350 S.E.2d 76, 80-81 (1986); *but see United States v. Narciso*, 446 F.Supp. 252, 289 (E.D. Mich. 1977) (if declarant identifies perpetrator while under the impression that he is being asked to indicate the responsible party, the identification may be accusatory in nature and would thus destroy any inherent reliability). Statements made to a physician for the sole purpose of preparing and presenting the State's case at trial are not admissible under the medical treatment exception. *State v. Stafford*, 317 N.C. 568, 574, 346 S.E.2d 463, 467 (1986); *Lucas*, 94 N.C. App. at 449, 380 S.E.2d at 567-68.

In the instant case, on the day after A.E.'s alleged sexual encounter with defendant, A.E.'s mother summoned help from police, who, after a brief interview, recommended that A.E. be taken to the hospital. At the hospital, A.E. was examined by Dr. Runyan for the purpose of determining whether she had been sexually molested. During the examination, A.E. told Dr. Runyan that "a man named [defendant]" who lived at the shelter had touched her, pointing to her "pee pee" and her chest, and had had sexual intercourse with her, causing her to bleed. Although Dr. Runyan's examination revealed no physical findings consistent with allegations of sexual abuse, he opined, based on his interview with A.E. during the examination, that A.E. was a sexually abused child. Contrary to defendant's contention, the fact that A.E. did not specifically complain of pain to Dr. Runyan is immaterial in determining the admissibility of her statements to the doctor under Rule 803(4). Dr. Runyan used the statements made by A.E. to make his diagnosis, and, accordingly, Dr. Runyan's challenged testimony was admissible. *See Lucas*, 94 N.C. App. at 449, 380 S.E.2d at 567.

### A.E.'s Mother

[4] The trial court deemed admissible A.E.'s out-of-court statements to her mother under the medical treatment exception to the hearsay rule. Defendant contends that the trial court erred in doing so because the statements made by A.E. to her mother "led directly and immediately to a criminal report, not to medical treatment."

As our Supreme Court noted in *Smith*, under the medical treatment exception, "[s]tatements to hospital attendants, ambulance drivers, or even members of the family might be included." N.C.G.S. § 8C-1, Rule 803(4) commentary (1992). The Court emphasized that

statements made by a young child to a family member may be admissible under this exception even where the child did not specifically request medical attention because "young children cannot independently seek out medical attention, but must rely on their caretakers to do so." *Smith*, 315 N.C. at 84, 337 S.E.2d at 840. The key factor in determining the admissibility of such statements is whether the statements resulted in the child receiving medical treatment and/or diagnosis. *See id.* at 84-85, 337 S.E.2d at 840; *Jones*, 89 N.C. App. at 590-91, 367 S.E.2d at 143-44; *Lucas*, 94 N.C. App. at 446, 380 S.E.2d at 566.

In the instant case, A.E.'s mother testified that on the evening of the drugstore incident on 4 September 1990, and the following day, A.E. acted strange and withdrawn, would not talk, and cried a lot. While on a downtown Chapel Hill street on the day after the alleged incident, A.E.'s mother repeatedly asked her daughter what was wrong, and A.E. finally told her that "[defendant] hurt me," pointing to her chest and between her legs. A.E.'s mother immediately located a police officer and told him that she wanted her daughter's comments investigated. Police questioning resulted in A.E., along with her mother and police social workers, being taken to the hospital in order for A.E. "to get checked," after which she was diagnosed as having been sexually abused. Despite the fact that A.E.'s mother, upon hearing her daughter's statement, first found a police officer and requested assistance, A.E.'s statements to her mother resulted in A.E. being taken to the hospital the same day and receiving a medical diagnosis. Therefore, the statements were properly admitted under Rule 803(4).

### Jane Tillotson

[5] The trial court admitted under Rule 803(4) out-of-court statements made by A.E. to Jane Tillotson two months after the alleged incident. Defendant contends that Tillotson's testimony was inadmissible under the medical treatment exception because A.E.'s conversations with Tillotson "were never intended to assist Tillotson in making a diagnosis, but were, in significant part, to facilitate the child's participation in and contribution to the criminal prosecution" of defendant.

"[S]tatements made by a victim of child sexual abuse to a psychologist during the course of diagnosis and treatment are admissible under Rule 803(4)." *State v. Bullock*, 320 N.C. 780, 783, 360 S.E.2d 689, 690 (1987). Tillotson testified at trial as an expert

in the field of clinical and child psychology, and stated that the purpose of A.E.'s visits with her was to obtain therapy due to behavior problems that she had been exhibiting, such as nightmares, bed wetting, frequent masturbation, temper outbursts, clinging behavior, aggressive behavior, and fearfulness. A.E. received therapy from Tillotson for one hour per week beginning on 7 November 1990. During a session on 19 December 1990, A.E. told Tillotson that "[defendant] hurt me at that restaurant in the bathroom" and "[defendant] put his ding-dong in my private part," and that "only Dad and [defendant]" had ever hurt her like that. Tillotson continued treating A.E. until April, 1991, during which time A.E.'s behavior improved.

Although undoubtedly Tillotson's visits with A.E. did prepare Tillotson for her testimony at trial and did contribute to the prosecution of defendant, these clearly were not the primary purposes of Tillotson's treatment of A.E. Tillotson testified that A.E.'s mother brought A.E. to Tillotson for help with behavioral problems. The statements admitted at trial were made by A.E. during the course of her diagnosis by Tillotson as a sexually abused child and her treatment therefor, which lasted several months. Accordingly, A.E.'s statements to Tillotson were properly admitted by the trial court under Rule 803(4). See Lucas, 94 N.C. App. at 449, 380 S.E.2d at 567 (upholding trial court's admission of doctor's testimony under medical treatment exception despite fact that doctor's examination of child in part prepared him for trial).

II

[6] Defendant argues that the trial court erred in denying defendant's motions to dismiss the charge of indecent liberties. According to defendant, the State failed to meet its burden of producing substantial evidence of the essential elements of the offense. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).

A person is guilty of taking indecent liberties with a child under the age of sixteen if he either "willfully takes or attempts to take any immoral, improper, or indecent liberties . . . for the purpose of arousing or gratifying sexual desire," or "willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body" of the child. N.C.G.S. § 14-202.1 (1986). In the instant case, the specific theory

upon which the State's case rested with regard to the indecent liberties charge was that on 4 September 1990, defendant touched A.E. with his hand on her chest and placed his hand on her vaginal area for the purpose of arousing or gratifying sexual desire. The State presented evidence that A.E. told her mother that "[defendant] touched me," pointing to her chest and between her legs; that she told Marjorie Dekeersgieter that defendant hurt her, pointing to "her vagina type thing"; and that she told Dr. Runyan that something bad had happened in the bathroom and pointed to her crotch and also said that "he hurt me here," indicating that defendant had touched her chest as well. A.E. also mentioned defendant's "ding-dong."

Defendant argues that there was no evidence that A.E. told anyone that "defendant had placed his hand or hands anywhere on her body . . . or that defendant had removed her clothes." However, we reject any contention that a child's failure to say expressly that a defendant touched a particular place on her body (as opposed to pointing to the body part at issue and saying she was touched, or hurt, there), or that the child was unclothed when the touching occurred, renders the State's evidence insufficient on the touching element of indecent liberties. The evidence presented in the instant case adequately supports a reasonable conclusion that defendant touched A.E.'s chest and her vaginal area. And although we find meritorious defendant's contention at oral argument that evidence of A.E.'s reference to defendant's penis could have resulted merely from A.E. observing defendant urinating, particularly in light of the fact that Dr. Runyan made no physical findings of penetration, this evidence has no bearing on the indecent liberties charge. Moreover, the jury obviously did not believe the evidence of sexual intercourse and acquitted defendant of the rape charge.

With regard to evidence that the touching by defendant was for the purpose of arousal or sexual gratification, this Court has held that a " 'defendant's purpose, being a mental attitude, is seldom provable by direct evidence and must ordinarily be proven by inference.' " *Jones,* 89 N.C. App. at 597-98, 367 S.E.2d at 147 (citation omitted). Here, the evidence established that, while alone in a bathroom with A.E., defendant touched her chest and her vaginal area. Such evidence is sufficient to permit the jury to infer that defendant's purpose in doing so was to arouse himself or to gratify

GUYTHER v. NATIONWIDE MUT. FIRE INS. CO.

[109 N.C. App. 506 (1993)]

his sexual desire. The trial court properly submitted the charge of indecent liberties to the jury.

For the foregoing reasons, in the instant case we discern

No error.

Judges JOHNSON and MARTIN concur.