STATE OF NORTH CAROLINA v. GEORGE ELTON HINNANT

No. COA97-1251

(Filed 15 December 1998)

**1. Evidence— hearsay—statements of child sex abuse victim**

The trial court did not err in a prosecution for first-degree rape, first-degree sex offense, and taking indecent liberties with a minor by admitting into evidence the hearsay statements of the victim where the court determined that she was unavailable due to her emotional condition and not due to any incompetency. Such a determination is properly within the court's discretion

STATE v. HINNANT

[131 N.C. App. 591 (1998)]

based on the judge's personal observation of the witness's demeanor and responses to questions on voir dire. Here, an expert witness testified that the five-year-old victim feared defendant and would be traumatized by seeing defendant in the courtroom, and the statements were admitted under the exceptions for excited utterances, existing mental, emotional and physical consideration, and medical diagnosis or treatment. These are firmly rooted exceptions which are deemed inherently trustworthy.

**2. Appeal and Error— appealability—motion to dismiss not renewed**

Appellate review of the denial of a motion to dismiss a first-degree rape charge was waived where defendant's motion came at the close of the State's case and was not renewed at the close of all of the evidence.

**3. Constitutional Law— effective assistance of counsel—failure to renew motion to dismiss**

A claim of ineffective assistance of counsel failed where defendant based the claim on the failure of his counsel to renew his motion to dismiss at the close of all of the evidence but could not show that the motion would have been granted.

Judge HUNTER dissenting.

Appeal by defendant from judgment entered 14 March 1997 by Judge Louis B. Meyer in Wake County Superior Court. Heard in the Court of Appeals 21 September 1998.

The defendant, George Elton Hinnant, was tried by a jury at the 10 March 1997 criminal session of Wake County Superior Court for first degree rape, first degree sex offense and taking indecent liberties with a minor. The alleged victim, J, is his 5 year old niece.

The evidence produced at trial tended to show that at the time of the alleged incidents, defendant lived at his mother's home with J, J's mother Theresa Burnett (who is the defendant's sister) and J's sister Jaylan. On 16 December 1995 defendant was drinking malt liquor with some friends at a local "hangout," a store on Poole Road. Sometime early in the afternoon, Ms. Burnett brought J and Jaylan to the store and Burnett began drinking. Upon returning home that evening, defendant went into the kitchen to prepare his dinner while Ms. Burnett sat in the living room and watched television. About 5 to 10

minutes later, J ran into the living room "running and crying and saying that [defendant] had touched her." Ms. Burnett called the police, and Officers J. A. Taylor and Sean R. Woolrich of the Raleigh Police Department responded to the call.

During an interview with the police, J told Officer Taylor that "[m]y uncle touched my butt this morning. When he touched me, it hurt." Officer Taylor also testified that Ms. Burnett had told him that J told her that defendant had touched her on the "butt and pussy." Officer Woolrich testified that Ms. Burnett told him that J had accused defendant of touching her while she played on her bicycle that morning, but that J had also made a statement that defendant had put his hands in her pants when she got out of bed that morning.

J and Ms. Burnett were taken to the police station for further interviews. At the police station, Ms. Burnett denied that defendant had done anything to J. Detective Albert O'Connell testified that J told him that defendant had hurt her and pointed to her crotch and buttocks, and also showed detectives that defendant had hurt her by pointing to the vagina on an anatomically correct doll.

J was taken to Wake Medical Center for an examination. The doctor performing the examination noted no signs of trauma. During a follow-up exam two weeks later on 2 January 1996, J was evaluated by Lauren Roswell-Flick, a clinical psychologist and an expert in child sexual abuse. J told Roswell-Flick that defendant had hurt her and pointed at the vagina on an anatomically correct doll, and described further instances of sexual abuse. Dr. Vivian Everette, a pediatrician at Wake Medical Center, testified that she conducted a thorough examination of J on 2 January 1996. Dr. Everette testified that she noted no trauma, but that "the exam was consistent with the history that [J] gave Ms. Flick, which has a history of genital fondling, digital vaginal penetration and cunnilingus."

Kim Alexander, a clinical social worker for the Wake County Department of Social Services, began treating J 7 May 1996. Alexander was qualified as an expert in child sexual abuse over defendant's objection. Alexander testified that J's conduct was consistent with that of a child who has been sexually abused in that J "expresses fear and anger toward the perpetrator . . . They're also consistent in that she's showed some sexualized behavior. And another aspect of her behavior that's consistent with other sexually abused children is lack of boundaries."

STATE v. HINNANT

[131 N.C. App. 591 (1998)]

Defendant was arrested on 4 January 1996. On 19 February 1996 defendant was indicted on charges of first degree rape, first degree sex offense and taking indecent liberties with a minor. Defendant's cases came to trial 10 March 1997. At trial, defendant objected to the competency of J testifying because she was too young to know the meaning of the oath. When the court attempted to interview J, she became upset. The trial court determined that J's emotional state made her unavailable to testify. However, the trial court allowed her hearsay statements into evidence over defendant's objection.

On 14 March 1997, a jury found defendant guilty of first degree rape, first degree sexual offense and taking indecent liberties with a minor. Defendant was sentenced to an active prison term of no less than 384 months and no more than 460 months. Defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General R. Kendrick Cleveland, for the State.*

*John F. Oates, Jr., for defendant-appellant.*

EAGLES, Chief Judge.

[1] We first consider whether the trial court erred in admitting into evidence the hearsay statements of the victim, J. Defendant contends that the trial court, in order to admit the hearsay statements, must make specific findings of fact with respect to the trustworthiness and probative value of the statements. *State v. Deanes*, 323 N.C. 508, 515, 374 S.E.2d 249, 255 (1988), *cert. denied*, 490 U.S. 1101, 104 L.Ed.2d 1009 (1989). Defendant asserts that the trial court made no such findings. Additionally, defendant argues that even if the trial court had made the required findings of fact, the statements would fail to meet the test of admissibility. First, defendant argues that the statements made by J to Officer Taylor and Ms. Burnett were not specific as to time, place and occurrence. Additionally, defendant contends that J's statements to the officers were inconsistent. Defendant contends that these statements were "contra-indicative of trustworthiness." Second, defendant contends that the testimony of Ms. Roswell-Flick should have been excluded based on *Idaho v. Wright*, 497 U.S. 805, 111 L.Ed.2d 638 (1990) because Roswell-Flicks' interview with J "lacked procedural safeguards" and violated defendant's right to confrontation. Defendant asserts that the trial court violated defendant's right to confrontation because the statements were not reliable enough to justify their admission without any opportunity for cross-examination.

STATE v. HINNANT

[131 N.C. App. 591 (1998)]

The State first contends that the trial court properly determined that J was unavailable due to her emotional state and not as a result of her incompetency to testify. Second, the State argues that J's statements were not admitted pursuant to the residual exception to the hearsay rule. The State contends that the statements were admitted under firmly rooted exceptions to the hearsay rule; the excited utterance exception and the existing mental, emotional and physical condition exception. Accordingly, the State asserts that no findings regarding the reliability of the statements were required because reliability is presumed under these exceptions. *State v. Rogers*, 109 N.C. App. 491, 499-500, 428 S.E.2d 220, 225, *review denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied sub nom. Rogers v. North Carolina*, 511 U.S. 1008, 128 L.Ed.2d 54, *reh'g denied*, 511 U.S. 1102, 128 L.Ed.2d 495 (1994).

After careful consideration of the record, briefs and contentions of both parties, we conclude there was no error. The trial court determined that J was unavailable due to her emotional condition and not due to any incompetency to testify. Such a determination is properly within the court's discretion based on the trial judge's "personal observation of the witness's demeanor and responses to questions on voir dire." *State v. Chandler*, 324 N.C. 172, 180, 376 S.E.2d 728, 734 (1989) (citing *State v. Fearing*, 315 N.C. 167, 337 S.E.2d 551 (1985)). Kim Alexander, a clinical social worker testifying as an expert in child sexual abuse, testified on voir dire that J feared defendant and would be traumatized by seeing defendant in the courtroom. Accordingly, the trial court properly determined that J, a 5 year old child, was unavailable due to her emotional condition.

The statements made by J to Ms. Burnett and Officer Taylor were admitted under Rule 803(2), the excited utterance exception, and Rule 803(3), the existing mental, emotional and physical condition exception to the hearsay rule. The statements made to Ms. Roswell-Flick were admitted under Rule 803(4) as statements made for purposes of medical diagnosis or treatment. These exceptions are firmly rooted exceptions to the hearsay rule. *Rogers*, 109 N.C. App. at 500, 428 S.E.2d at 225. "[S]tatements admissible under a traditional, or 'firmly rooted,' hearsay exception are deemed inherently trustworthy and thus, without further inquiry, satisfy the reliability prong of the Confrontation Clause test." *Id.* at 499, 428 S.E.2d at 225 (quoting *State v. Jones*, 89 N.C. App. 584, 598, 367 S.E.2d 139, 147-48 (1988)). Accordingly, we hold that the statements were properly admitted and that there was no error.

**[2]** We next consider whether the trial court erred in denying defendant's motion to dismiss the count of first degree rape at the close of the State's evidence. Defendant argues that "the State failed to show any evidence of penetration of the victim's vagina, however slight, and therefore the trial court erred in denying the motion [to dismiss]." Defendant states that even though defendant's counsel at trial failed to renew the motion to dismiss at the close of all the evidence, the sufficiency of the evidence to support a conviction is always a matter that may be reviewed on appeal. G.S. 15A-1446(d)(5). Additionally, defendant argues that should the Court determine that defendant has failed to preserve this issue for appellate review, and that it does not constitute plain error, the court should address the issue of whether defendant's trial counsel rendered ineffective assistance because he failed to move to dismiss at the close of all the evidence. Defendant contends that the error was prejudicial to defendant because he was convicted of first degree rape and "the evidence of penetration was so slight as to justify the granting of the motion to dismiss."

The State first argues that defendant has waived this assignment of error because the defendant's introduction of evidence on his behalf waives his right to appeal denial of a motion to dismiss made at the close of the State's evidence. The State asserts that even if appellate review had not been waived, there was sufficient evidence of penetration to support the conviction. The State points to the testimony of Roswell-Flick, who testified that J told her that defendant had touched her vagina with his penis, and had also told her that he had put his penis inside her vagina. The State also contends that the actions of J mimicking sexual intercourse with a punching bag, and her placement of a male anatomically correct doll face down on top of a female anatomically correct doll, was further evidence of penetration to support defendant's conviction. Finally, the State contends that defendant's ineffective assistance of counsel claim has no merit because defendant cannot show that "but for the error, the result of defendant's trial would have been different."

We hold that defendant has waived appellate review of this issue. Defendant moved to dismiss the charge of first degree rape at the close of the State's case for insufficient evidence. The trial court denied the motion. Defendant did not renew his motion to dismiss at the close of all the evidence. Under these facts our Supreme Court has held that:

> [U]nder Rule 10(b)(3) of the North Carolina Rules of Appellate Procedure, the issue of insufficiency was not preserved for appel-

late review. N.C.G.S. § 15A-1446(d)(5) provides that questions of insufficiency of the evidence may be the subject of appellate review even when no objection or motion has been made at trial. However, Rule 10(b)(3) provides that a defendant who fails to make a motion to dismiss at the close of all the evidence may not attack on appeal the sufficiency of the evidence at trial. We have specifically held in this regard that: 'To the extent that N.C.G.S. § 15A-1446(d)(5) is inconsistent with N.C. R. App. P. 10(b)(3), the statute must fail.'

*State v. Richardson*, 341 N.C. 658, 676-77, 462 S.E.2d 492, 504 (1995) (quoting *State v. Stocks*, 319 N.C. 437, 439, 355 S.E.2d 492, 493 (1987)). Accordingly, appellate review has been waived.

[3] Additionally, the defendant's claim of ineffective assistance of counsel fails. Defendant cannot show that even if his counsel had moved to dismiss at the close of all the evidence, that the motion would have been granted by the trial court. There was trial testimony concerning evidence of penetration by defendant. Accordingly, defendant cannot show that trial counsel's failure to move to dismiss at the close of all the evidence prejudiced his defense. *State v. Braswell*, 312 N.C. 553, 565, 324 S.E.2d 241, 249 (1985). The assignment of error is overruled.

No error.

Judge LEWIS concurs.

Judge HUNTER dissents.

Judge HUNTER dissenting.

I agree with the majority's decision regarding the admissibility of the hearsay statements. Further, I believe the State presented sufficient evidence at trial to convict defendant of the charges of first-degree sex offense and taking indecent liberties with a minor, in violation of N.C. Gen. Stat. § 14-27.4(a)(1) (Cum. Supp. 1997) and N.C. Gen. Stat. § 14-202.1 (1993), respectively. However, I do not believe the State presented sufficient evidence at trial to prove that defendant engaged in vaginal intercourse with the victim, a required element of first-degree rape under N.C. Gen. Stat. § 14-27.2(a)(1) (Cum. Supp. 1997). Therefore, I would reverse the trial court's denial of defendant's motion to dismiss the charge of first-degree rape.

At the outset, I note that the majority is correct in asserting that, pursuant to Rule 10(b)(3) of the North Carolina Rules of Appellate Procedure, defendant failed to properly preserve for review the issue of the sufficiency of the evidence by moving for a dismissal at the close of all the evidence. N.C.R. App. P. Rule 10(b)(3) (1998). Nevertheless, I believe that in order to "prevent manifest injustice" to defendant, this Court has the discretionary authority pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure to review the facts of this case to determine whether sufficient evidence existed, regardless of whether defendant moved for a dismissal at the close of all the evidence. N.C.R. App. P. Rule 2 (1998); *see State v. Stocks*, 319 N.C. 437, 355 S.E.2d 492 (1987) (where our Supreme Court stated that "[w]hile we thus are not compelled to do so, we have nevertheless reviewed the evidence in our discretion . . . ." *Id.* at 439, 355 S.E.2d at 493 (*citing State v. Fikes*, 270 N.C. 780, 781, 155 S.E.2d 277, 278 (1967)); *see also State v. Jordan*, 321 N.C. 714, 717, 365 S.E.2d 617, 619 (1988).

In ruling on a motion to dismiss, the trial court must determine whether substantial evidence exists as to each essential element of the charged offense and that the defendant is the perpetrator of that offense. *State v. Summers*, 92 N.C. App. 453, 455, 374 S.E.2d 631, 633 (1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

In order for the State to meet its burden of proving defendant guilty of first-degree rape pursuant to N.C. Gen. Stat. § 14-27.2(a)(1), it must demonstrate by substantial evidence that defendant engaged in "vaginal intercourse" with the victim, among other things. *Id.* at 456, 374 S.E.2d at 633. Vaginal intercourse is defined as "the *slightest* penetration of the female sex organ by the male sex organ." *Id.* In this case, contrary to the majority's assertion, I do not feel the State's evidence rose to the level of showing by substantial evidence even the slightest vaginal penetration of the victim by defendant's male sex organ.

At trial, one of the State's witnesses, Ms. Roswell-Flick, a clinical psychologist, related a conversation she had with the four-year-old victim on 2 January 1996, when she was investigating allegations of sexual abuse by defendant. During the course of her discussion with the victim, Ms. Roswell-Flick used anatomically correct male and female dolls to assist the victim in describing exactly what occurred

between she and defendant. However, as the trial court noted, the victim could not distinguish between the two dolls, although she could identify the specific parts of the body.

Ms. Roswell-Flick began asking the four-year-old victim if anyone had ever touched her vagina, at which point the following conversation occurred:

> I said, "Does anyone ever touch you down here?" indicating the vagina of the girl doll, and she said, "Yeah, [defendant] does." . . . I said, "What did he do?" and she said, "He put his hand down there." I said, "Did he put it on the inside or the outside of that part?" and she pointed directly to the vagina. I said, "How did that feel?" and she said, "It hurt." I said, "Did [defendant] kiss you or lick you any place?" and she said, "He licked me." I said, "Where did he lick you?" and she pointed to the vagina of the doll. I said, "Did [defendant] do anything else?" and she said, "No."

Thereafter, Ms. Roswell-Flick asked the victim if defendant had ever touched her with his male sex organ, and the following conversation occurred:

> "Did you ever see [defendant's male sex organ]?" . . . [,] and she said, "Yeah." I said, "What did he do?" [a]nd she said, "He took it off." I said, "Did he ever touch you with that part?" indicating the [male sex organ], and she said, "Yeah." I said, "Where did he put it?" and she pointed directly between her own legs to her vagina. I said, "Did he put it on the inside or the outside?" and she said, "The inside."

Based on this hearsay testimony, the majority states that "[t]here was trial testimony concerning evidence of penetration by defendant." I disagree.

Ms. Roswell-Flick's testimony regarding her conversation with the four-year-old victim indicates that the victim's recollection of the events on or about 16 December 1995 is vague and confused as to the issue of vaginal intercourse. Not only is the testimony hard to follow, but there is also no indication as to when, where or how defendant engaged in vaginal intercourse with the victim. Further, there is absolutely no medical evidence of vaginal intercourse, nor is there any corroborating evidence to support such a conclusion. However, even if a slight inference of defendant's guilt could be gleaned from this testimony, it nevertheless fails to rise to the level of substantial evidence.

In criminal cases of this magnitude, a trial court, or an appellate court, should not infer from this scant hearsay testimony that defendant engaged in vaginal intercourse with the victim. Two considerations should prevent us from drawing such an inference. First, in recognition of the heavy burden placed upon the State in criminal cases, we should not "draw inferences against the accused from what must be characterized as vague and ambiguous testimony"; and second, there is absolutely no other evidence in the record to show that defendant engaged in vaginal intercourse with the victim. *State v. Ferguson*, 450 N.E.2d 265, 271-272 (Ohio 1983).

As to the first consideration, we must remember that it is the State's job to prove by substantial evidence each element of the crime charged, and that the defendant is the perpetrator of the offense. *State v. Summers*, 92 N.C. App. at 455, 374 S.E.2d at 633. Therefore, as the Ohio Supreme Court recognized in *State v. Ferguson:*

> [A]s unpleasant an ordeal as it might be, we must reinforce the need to have the events described with sufficient clarity to establish the offender's guilt beyond a reasonable doubt. To this end, the prosecutor must be aware of the elements necessary to prove the state's case and to elicit testimony as to those elements as tactfully as possible.

*Id.* at 272 n.6. This being the case, it was the State's duty to elicit testimony from its witnesses that established by substantial evidence that defendant vaginally penetrated the victim with his male sex organ.

In this case, other than Ms. Roswell-Flick's hearsay testimony of the four-year-old victim, there was absolutely no other evidence presented by the State which showed any type of vaginal penetration by the male sex organ, even slight penetration. The victim never mentioned to any of the investigating officers or her mother when she spoke with them on 16 December 1995, or at any other time, that defendant penetrated her vagina with his male sex organ. Further, since she was unable to testify due to her young age, the only evidence offered at trial by the State was the hearsay testimony from the other witnesses.

In addition, there is absolutely no medical evidence of vaginal penetration of the victim by the defendant's male sex organ. Dr. Everett, a pediatrician specializing in child sex abuse cases, testified that an external genital exam was performed on the victim on 16

December 1995, and that no "obvious lesions or signs of trauma" were discovered. Further, she testified that her physical exam of the victim "was consistent with . . . a history of genital fondling, digital [finger] vaginal penetration and cunnilingus," but not of vaginal penetration by the male sex organ.

In summary, the only evidence presented by the State which tended to show defendant engaged in vaginal intercourse with the victim was the hearsay testimony of Ms. Roswell-Flick, in which she described a conversation she had with the four-year-old victim. After a careful review of the record, and given the heavy burden placed upon the State in criminal cases to produce substantial evidence of each element of the crime charged, I believe there was insufficient evidence that defendant engaged in vaginal intercourse with the victim. Therefore, I would reverse defendant's conviction on the charge of first-degree rape.